[Cite as *State v. Andrus*, 2020-Ohio-6810.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-A-0082** |
| MICHAEL E. ANDRUS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2018 CR 00136.

Judgment: Affirmed.

*Cecilia M. Cooper*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Prosecutor's Office, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Malcolm S. Douglas*, 113 North Chestnut Street, Jefferson, OH 44047 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Michael E. Andrus, appeals from the judgment entry of sentence issued by the Ashtabula County Court of Common Pleas on October 11, 2019, following a jury trial. The judgment is affirmed.

{¶2} On April 4, 2018, appellant was indicted on the following four counts, to which he pled not guilty: (1) Burglary (F3), in violation of R.C. 2911.12(A)(3); (2) Menacing by Stalking (F4) in violation of R.C. 2903.211(A)(1)(B)(2)(e); (3) Menacing by

Stalking (F4), in violation of R.C. 2903.211(A)(1)(B)(2)(c); and (4) Domestic Violence (M4), in violation of R.C. 2919.25(C)(D)(2). A jury trial commenced August 6, 2019.

{¶3} Appellant's ex-wife, D.S., testified that she was married to appellant for four years before filing for divorce. When their divorce was finalized in June 2017, D.S. was awarded the marital home and named the residential parent of their daughter, for educational purposes, who was six years old at the time of trial.

{¶4} D.S. testified that appellant has been violent with her, has threatened her, and that she has had cause to call the police on him. During the marriage, appellant was very controlling. D.S. testified that while she was pregnant in 2012, appellant saw an old message on her phone from a man and became very upset. Appellant slammed her into the bedroom door and wall. D.S. was injured by the doorknob, sustaining a bruise to her abdomen. In 2016, appellant saw D.S. with divorce papers and wrestled her to the floor. He took the papers and ripped them up, but D.S. was not severely injured.

{¶5} On July 10, 2017, D.S. dropped off their daughter at appellant's home for a visit. Appellant was angry that he had seen vehicles in D.S.'s driveway and accused her of having men at the house. D.S. shut her car door. Appellant opened the car door, grabbed D.S. by the face and neck, and was choking her. D.S. pushed him away and called the police. She remained in the driveway until the police arrived. D.S. provided the police with a statement, and they took pictures of marks around her neck.

{¶6} Deputy James Lewis testified that he was dispatched to the domestic violence call. He met with D.S., who was locked in her car in the driveway. D.S. provided a statement, and the deputy observed redness on her neck. Deputy Lewis

2

also spoke with appellant, who stated he had not put his hands on D.S.'s neck. After the deputy submitted his report, D.S. pursued domestic violence charges against appellant.

{¶7} On July 14, 2017, appellant was observed removing a deer feeder from D.S.'s backyard. D.S.'s mother testified that she observed him from inside the home and called the police because he was not permitted on the property and the deer feeder did not belong to him. D.S.'s mother was afraid of appellant because he had threatened to ruin her financially and take her to court for anything and everything she did. She testified appellant told her he would make sure that she and D.S. pay for anything they have done.

{¶8} Deputy Anthony Wood testified that he was dispatched to the property for a theft complaint called in by D.S.'s mother. After speaking with D.S. and her mother, the deputy spoke to appellant who was then on a neighbor's property. Appellant admitted he took the deer feeder. Appellant believed that he and D.S. would get back together and that there was nothing in the court records to prevent him from being there. Deputy Wood advised appellant to return the deer feeder and not to return to the property for any reason. He also advised appellant to stop harassing D.S., after appellant stated he was going to start calling the police and making false accusations to get her in trouble. The deputy stated appellant would be cited with trespass if he went back to her property.

{¶9} On January 1, 2018, appellant arrived at D.S.'s residence to return their daughter after a visit. D.S.'s mother was to meet them there, but she ran out for a quick errand after appellant was late in arriving. Appellant texted D.S. when he was on his

3

way, and D.S. asked him to wait in the driveway for her mother to return.  When D.S.'s mother returned, the front door was open, and appellant was inside the residence without permission to enter.  D.S.'s mother testified that appellant told her the door was open when he arrived, and his daughter ran inside, so he followed to make sure she was safe.  She testified that she told appellant that was not true, because she had ensured the door was closed when she left.  Appellant then changed his story and stated his daughter opened the door.  But according to D.S. and her mother, the four-year-old child did not know the code to open the keypad lock on the door.  When her mother asked appellant to leave, he refused, stating it was his house and calling D.S. vulgar names.  After D.S.'s mother threatened to call the police, appellant left.

{¶10}  D.S. captured appellant's entry into her home on video camera.  The recordings show appellant approaching the front door with their daughter in his arms, looking into her garage window, standing on her porch, and walking around the playroom.  D.S. called the sheriff's department later that day.

{¶11}  Deputy Lewis testified that he responded to the call of a burglary.  He obtained statements from D.S. and her mother.  D.S. showed him the recordings from a video doorbell and an indoor surveillance system.  The deputy asked D.S. to email him the videos.  According to his report, D.S. advised the deputy that the front door automatically locks when shut, but that she realized the automatic lock had somehow been turned off.

{¶12}  Deputy Lewis spoke with appellant by phone about the burglary allegation.  Appellant told the deputy that he noticed the door to the residence was open when he

4

was dropping off his daughter. Appellant stated he entered the residence to check on his daughter who had entered the residence when he set her down.

{¶13} On January 19, 2018, D.S. was picking up their daughter from the home of appellant's parents. D.S. was on the phone with her mother when appellant asked if she was recording him. Appellant smacked the phone out of D.S.'s hand and prevented her from picking it up. D.S.'s mother testified that she heard scuffling noises and then heard D.S. say, "give me my phone back." Appellant grabbed the phone, attempted to look through it, and pretended to throw it in the pond before dropping it at D.S.'s feet. D.S. was afraid appellant was going to cause her physical harm, and she called the police to give a statement. Appellant called D.S. seven times after she left.

{¶14} Deputy Nicholas Pinney testified that he was dispatched to the domestic dispute call and first met with D.S. at her residence. He then went to the home of appellant's parents, but appellant was no longer there. Deputy Pinney testified that Deputy Wood spoke to appellant on the phone, and they met him at another address. Appellant denied any physical altercation and stated he had not knocked the cell phone out of D.S.'s hand. Appellant claimed D.S. dropped the phone, and he picked it up to return it to her. He did admit, however, that he had pretended to throw the phone in the pond.

{¶15} On January 24, 2018, appellant contacted Deputy Pinney. Appellant stated that he had spoken with an attorney and wanted to provide him with a video and a written statement. Appellant emailed Deputy Pinney a video recording from a security camera of the January 19 incident. In the video, it appears that appellant walked up to D.S. while holding their daughter, entered her personal space, and then her cell phone

5

is projected into the air. Deputy Pinney testified that it did not appear the cell phone was dropped. Appellant then picked up the phone and appeared to be keeping it away from D.S.

{¶16} On January 25, 2018, D.S. was at home with her boyfriend, who was hunting behind the house. Their daughter was also at home, napping at the time. D.S.'s boyfriend's car was in the driveway when appellant pulled in. D.S. was not expecting appellant, and there was no visitation scheduled. Appellant came up to the house and began pounding on the door, yelling, "Where's my daughter?" D.S. opened the door and asked him to leave, but appellant refused. D.S.'s boyfriend testified that he was in the backyard when he heard a car pull into the driveway and then heard appellant yelling and pounding on the door. He walked around to the front of the house and observed appellant yelling at D.S., asking D.S. why her boyfriend was at "his" house in "his" backyard. D.S.'s boyfriend attempted to intervene and told appellant to leave many times. D.S. then called the sheriff's department. Appellant remained on the property until the deputies arrived.

{¶17} Deputy Pinney responded to the call of an unwanted subject and observed appellant's vehicle backed into the driveway. Appellant was standing outside of the vehicle, and D.S. was on the porch with her boyfriend. Appellant told the deputy he came to the house to talk to D.S. about their daughter because D.S. was not answering the phone. D.S. told the deputy she had asked appellant to leave multiple times. D.S. asked the deputy to formally "trespass" appellant from her property. The deputy understood this to mean that after appellant was "trespassed," he could be charged with

criminal trespassing if he came back on the property. Appellant was so advised, and he left.

{¶18} The deputy took a statement from D.S., who advised that appellant seemed at all times to know her whereabouts. She had observed appellant remove tracking devices from her vehicle in the past, and she believed appellant had again installed a tracking device on her vehicle. Later that day, D.S., her boyfriend, and her father used a jack to raise up her vehicle and located a tracking device attached to the frame. Deputy Pinney returned to the residence with Sergeant Rose, who crawled under the vehicle, observed, photographed, and removed the tracking device. Deputy Pinney entered the GPS tracking device into evidence, along with a DNA buccal swab standard for D.S.'s boyfriend. Appellant was never swabbed for DNA, and the GPS tracker was never tested to establish whether it was in working condition.

{¶19} D.S. testified that she felt appellant had been stalking her, his behavior was causing her mental distress, and she was very afraid that he would harm her. As a result, she had a security system installed in her home. She testified that appellant made threatening statements to her, threatened to purchase property directly behind her home, and would sometimes park in the neighbor's driveway, which is attached to her backyard.

{¶20} The defense called one witness, appellant's mother, who testified as to appellant's cell phone records. From the bill she received covering the calls made and received on January 1, 2018, it was apparent that appellant had called D.S. approximately 25-30 times that day.

7

{¶21} At the close of the state's case-in-chief, defense counsel moved for a Crim.R. 29(A) judgment of acquittal on either Count Two or Count Three, on the basis that "[t]hey appear to be the exact same Motion, Menacing by Stalking. Same dates, same period of time." The trial court overruled the motion but indicated they would merge for sentencing purposes if found guilty of both charges. The motion was renewed at the close of all evidence and again overruled.

{¶22} The jury found appellant guilty of one count of Trespass in a Habitation (F4), a lesser included offense of Burglary, in violation of R.C. 2911.12(B); both counts of Menacing by Stalking (F4); and one count of Domestic Violence (M4).

{¶23} The trial court held appellant's sentencing hearing on October 10, 2019. The trial court imposed five years of intensive community control and 151 days in the Ashtabula County Jail, with credit for 63 days served. The sentencing entry indicates that a violation of community control may lead to a longer or more restrictive sanction, up to and including a prison term of 54 months, i.e., 18 months served consecutively on each of the three felony counts. The entry further states that no jail is imposed on the misdemeanor count, and no fines are imposed for any of the four counts. The sentence was journalized the following day.

{¶24} From the judgment of conviction, appellant raises six assignments of error for our review, which we will consider out of numerical order:

> [1.] The Trial Court abused its discretion by allowing the State of Ohio to present evidence outside of the date range listed in the Bill of Particulars and the Indictment.

> [2.] Trial Court abused its discretion by admitting into evidence the GPS tracker without a valid chain of custody.

8

[3.] The State of Ohio failed to produce legally sufficient evidence to sustain a conviction on all four counts of the indictment.

[4.] Appellant's conviction was against the manifest weight of the Evidence on Count One, Count Two, and Count Three.

[5.] Appellant received ineffective assistance of counsel as Trial Counsel waived any argument during the Rule 29(A) motion regarding Count One.

[6.] Appellant received ineffective assistance of counsel as Trial Counsel waived any argument during the Rule 29(C) motion after the jury reached an inconsistent verdict.

{¶25} Under his first two assignments of error, appellant argues the trial court committed an abuse of discretion by allowing the state to admit certain evidence.

{¶26} Generally, "'[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court.'" *State v. Robb*, 88 Ohio St.3d 59, 68 (2000), quoting *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. "Absent an abuse of discretion, as well as a showing of prejudice, an appellate court will not disturb the ruling of the trial court as to the admissibility of evidence." *State v. Irby*, 11th Dist. Trumbull No. 2015-T-0018, 2015-Ohio-5467, ¶66, citing *State v. Martin*, 19 Ohio St.3d 122, 129 (1985). "The Supreme Court of Ohio has stated that, '[w]here evidence has been improperly admitted * * * the admission is harmless "beyond a reasonable doubt" if the remaining evidence alone comprises "overwhelming" proof of defendant's guilt.'" *State v. Bennett*, 11th Dist. Ashtabula No. 2002-A-0020, 2005-Ohio-1567, ¶48, quoting *Sage, supra*, at 181.

{¶27} Appellant first challenges the trial court's admission of evidence outside the date range specified in the Indictment and Bill of Particulars regarding Counts Two and Three, Menacing by Stalking, in violation of R.C. 2903.211(A)(1).

9

{¶28} R.C. 2903.211(A)(1) provides: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. * * *"

{¶29} Appellant's convictions were elevated to fourth-degree felonies because the jury found that, in committing the offenses, appellant "trespassed on the land or premises where the victim lives" and "has a history of violence toward the victim or any other person or a history of other violent acts toward the victim or any other person." R.C. 2903.211(B)(2)(c)(e).

{¶30} "[T]he purpose for giving a bill of particulars is 'to elucidate or particularize the conduct of the accused,' but not 'to provide the accused with specifications of evidence or to serve as a substitute for discovery.'" *State v. Lawrinson*, 49 Ohio St.3d 238, 239 (1990), quoting *State v. Sellards*, 17 Ohio St.3d 169, 171 (1985); *accord State v. Robinson*, 11th Dist. Lake No. 2004-L-146, 2005-Ohio-6286, ¶24. "Thus, ' * * * [o]rdinarily, specifications as to date and time would not be required in a bill of particulars since such information does not describe particular *conduct*, but [instead describes] only *when* that conduct is alleged to have occurred, knowledge of which * * * is generally irrelevant to the preparation of a defense.'" *Sellards*, *supra*, at 171, quoting *State v. Gingell*, 7 Ohio App.3d 364, 367 (1st Dist.1982) (emphasis sic).

{¶31} The Bill of Particulars provided to the defense reads as follows, in relevant part:

> On or between 01/01/2018 and 01/25/2018, in the Township of Saybrook and Township of Geneva, County of Ashtabula, and

10

State of Ohio, one **MICHAEL E ANDRUS**, by engaging in a pattern of conduct, did knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person, to-wit: [D.S.] …

**Count Two**: …and the offender has a history of violence toward the victim or any other person or a history of other violent acts toward the victim or any other person; contrary to the form of the statute (in violation of Section 2903.211(A)(1)(B)(2)(e) of the Ohio Revised Code) in such case made and provided, and against the peace and dignity of the State of Ohio.

**Count Three**: …and in committing the offense, the offender, trespassed on the land or premises where the victim lives, to-wit: residence of [D.S.]; contrary to the form of the statute (in violation of Section 2903.211(A)(B)(2)(c) of the Ohio Revised Code) in such case made and provided, and against the peace and dignity of the State of Ohio.

{¶32} Appellant argues the state should not have been permitted to introduce testimony and evidence of incidents that occurred prior to January 1, 2018, to establish a pattern of conduct. Because these events occurred outside the date range, appellant argues, he was not on notice of the state's intent to use those incidents and was therefore unable to present an effective defense. The specific events at issue occurred in 2012 (when appellant allegedly slammed D.S. into the bedroom door and injured her abdomen); 2016 (when appellant allegedly wrestled D.S. to the ground for the divorce papers); July 10, 2017 (when appellant allegedly choked D.S. in her vehicle); and July 14, 2017 (when appellant allegedly removed the deer feeder from D.S.'s back yard).

{¶33} However, the state was charged with establishing not only a pattern of conduct, but also a history of violence or violent acts toward D.S. or any other person. Evidence of the incidents that took place in January 2018 was sufficient to establish a "pattern of conduct," as that phrase is defined in the statute: "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based

11

on any of those actions or incidents * * *."  R.C. 2903.211(D)(1).  The testimony relating to the prior incidents were, on the other hand, admissible and necessarily used by the state to establish appellant's history of violent acts toward D.S.  *See State v. Clark*, 6th Dist. Lucas No. L-17-1044, 2018-Ohio-521, ¶45 (citations omitted) ("The history-of-violence element can be proven by testimony alone."); *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶22 (as the state was required to prove there was a "history of violence," the fact that the offender committed an act of domestic violence two years prior was relevant and probative in proving an essential element of the felony offense); *State v. Teal*, 6th Dist. Lucas Nos. L-15-1280 & L-15-1281, 2017-Ohio-7202, ¶24 (testimony of prior acts was admissible for the purpose of demonstrating the offender's history of violent acts).

{¶34}  Appellant was on notice from the Indictment and the Bill of Particulars that the state was required to prove he had a history of violence or violent acts.  Further, because appellant was not indicted for the alleged incidents used at trial to establish his history of violence, the state was not required to list those specific dates.

{¶35}  Accordingly, we conclude that the trial court did not abuse its discretion by allowing the state to present evidence outside of the "pattern of conduct" date range listed in those documents.

{¶36}  Appellant's first assignment of error is without merit.

{¶37}  Appellant next challenges the trial court's admission of the GPS tracking device, for which he argues the state did not establish a chain of custody.

{¶38}  "The chain of custody of a piece of evidence is part of the authentication and identification requirement of Evid.R. 901. The state maintains the burden of

12

establishing the chain of custody of a piece of evidence." *State v. Rhodes*, 11th Dist. Lake No. 2000-L-089, 2001 WL 1602166, *6 (Dec. 14, 2001) (citations omitted). "However, the prosecution's burden is not absolute since 'the state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur.'" *Id.*, quoting *State v. Blevins*, 36 Ohio App.3d 147, 150 (10th Dist.1987); *see also State v. Wilkins*, 64 Ohio St.2d 382, 389 (1980) ("A strict chain of custody is not always required in order for physical evidence to be admissible."). "Moreover, even when a break in the chain of custody is uncovered, such goes to the credibility of the evidence and not its admissibility." *Id.* (citations omitted); *see also State v. Richey*, 64 Ohio St.3d 353, 360 (1992), *abrogated on other grounds* ("[t]he possibility of contamination goes to the weight of the evidence, not its admissibility").

{¶39} Deputy Pinney testified that he observed Sergeant Rose remove the GPS tracking device from under D.S.'s vehicle on January 25, 2018. The device was placed into an evidence bag, sealed, and turned into evidence to be sent to BCI for touch DNA analysis. The deputy was shown the device at trial, and he testified that he recognized it as the tracking device he turned into a lock box in the evidence room. Deputy Pinney also identified the report number and confirmed that the evidence bag was sealed when initially presented at trial. When testifying, both Deputy Pinney and D.S.'s boyfriend identified the GPS tracking device contained in the evidence bag as the one removed from D.S.'s vehicle.

{¶40} At the close of the state's case, defense counsel objected to admitting the GPS tracking device. The court overruled the objection and admitted the exhibit based upon the testimony of Deputy Pinney and of D.S.'s boyfriend.

13

{¶41} On appeal, appellant argues that the lack of testimony by other officers that subsequently handled the device and the fact that appellant did not submit DNA evidence led defense counsel to properly object to its admission as evidence. The state did not present DNA evidence at trial, however, which renders these arguments irrelevant. The testimony of eyewitnesses was neither hesitant nor doubtful as to the identification of the tracking device as the one that was removed from D.S.'s vehicle, and any issue as to credibility was for the jury to decide. As such, we conclude the state met its burden to establish that it is reasonably certain that neither substitution, alteration, nor tampering occurred with the physical evidence.

{¶42} The trial court did not abuse its discretion by admitting into evidence the GPS tracking device without a complete chain of custody.

{¶43} Appellant's second assignment of error is without merit.

{¶44} As his fourth assignment of error, appellant argues the manifest weight of the evidence presented at trial weighed heavily against his convictions for Counts One, Two, and Three.

{¶45} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997) (emphasis sic), quoting *Black's Law Dictionary* (6 Ed.1990) 1594.

{¶46} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (2d Dist.1983).

{¶47} Appellant specifically contends the jury rendered inconsistent verdicts by acquitting him of Burglary but convicting him of Menacing by Stalking.

{¶48} Count One of the Indictment charged Appellant with Burglary, in violation of R.C. 2911.12(A)(3): "No person, by force, stealth, or deception, shall * * * Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense." The criminal offense of which appellant was charged with committing as an element of Burglary was Menacing by Stalking.

{¶49} The jury found appellant not guilty of Burglary, however, and guilty of the lesser included offense of Trespass in a Habitation, in violation of R.C. 2911.12(B): "No person, by force, stealth, or deception, shall trespass in a permanent or temporary

15

habitation of any person when any person other than an accomplice of the offender is present or likely to be present."

{¶50} The Bill of Particulars alleges that appellant committed the Menacing by Stalking offenses on or between January 1 and January 25, 2018. One of these counts required appellant to have trespassed at the residence of D.S. The evidence established that appellant trespassed on D.S.'s property twice during this time frame—on January 1 and January 25. The Burglary offense was alleged to have occurred only on January 1, 2018. The fact that appellant was acquitted of the Burglary charge does not, however, foreclose the possibility that the jury concluded appellant trespassed for purposes of Menacing by Stalking on January 25. Thus, we are not convinced that the jury did, in fact, render inconsistent verdicts.

{¶51} Even assuming it did render inconsistent verdicts, we have previously explained why this argument lacks merit:

> The U.S. Supreme Court has indicated that 'where truly inconsistent verdicts have been reached, [the] most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.' *United States v. Powell,* 469 U.S. 57, 64-65 (1984) (quotation omitted). The Court reasoned that 'inconsistent verdicts * * * should not necessarily be interpreted as a windfall to the Government at the defendant's expense' because '[i]t is equally possible that the jury, convinced of guilt, properly reached its conclusion on [the offense the jury found guilt], and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [other] offense.' *Id.* at 65. The Court indicated that *Powell* was not a constitutional rule, but rather a rule under the Supreme Court's supervisory powers. *Id.* However, the Ohio Supreme Court has adopted *Powell's* reasoning. *State v. Hicks,* 43 Ohio St.3d 72, 78 (1989) ["Inconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict of guilt."].

*State v. Townsel*, 11th Dist. Lake No. 2014-L-033, 2014-Ohio-5470, ¶9.

{¶52} Having reviewed the evidence presented at trial, we are not persuaded that the jury created a manifest miscarriage of justice by convicting appellant of Menacing by Stalking and Trespass in a Habitation, while finding him not guilty of Burglary.

{¶53} Appellant's fourth assignment of error is without merit.

{¶54} As his third assignment of error, appellant argues the state failed to produce legally sufficient evidence to sustain his convictions.

{¶55} "With respect to sufficiency of the evidence, "'sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *Thompkins*, *supra*, at 386, quoting *Black's*, *supra*, at 1433. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.*, citing *State v. Robinson*, 162 Ohio St. 486 (1955). "In addition, a conviction based on legally insufficient evidence constitutes a denial of due process." *Id.*, citing *Tibbs*, supra, at 45, citing *Jackson v. Virginia*, 443 U.S. 307 (1979).

{¶56} With regard to appellant's convictions for Menacing by Stalking and Trespass in a Habitation, this argument lacks merit. The witness testimony, video recordings, GPS tracking device, and other evidence are legally sufficiently to support the jury's guilty verdicts as a matter of law. Further, the trial court did not err in denying appellant's Crim.R. 29(A) motion for acquittal on the Menacing by Stalking charges.

{¶57} Appellant raises no sufficiency argument as it pertains to his conviction for Domestic Violence, and we decline to undertake a de novo review. *See* App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the

17

party raising it fails to identify in the record the error on which the assignment of error is based * * *.").

{¶58} Appellant's third assignment of error is without merit.

{¶59} Under his fifth and sixth assignments of error, appellant argues he received ineffective assistance of trial counsel.

{¶60} In order to prevail on an ineffective assistance of counsel claim, an appellant must demonstrate that trial counsel's performance fell "below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus (adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)). In order to show prejudice, the appellant must demonstrate a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at paragraph three of the syllabus. If a claim can be disposed of by showing a lack of sufficient prejudice, there is no need to consider the first prong, i.e., whether trial counsel's performance was deficient. *Id.* at 143, citing *Strickland*, *supra*, at 695-696. There is a general presumption that trial counsel's conduct is within the broad range of professional assistance. *Id.* at 142-143.

{¶61} Appellant first contends trial counsel demonstrated ineffective assistance by not moving for a judgment of acquittal under Crim.R. 29(A) on the basis that insufficiency of the evidence regarding Count Two and Count Three would directly affect the jury's ability to deliberate on Count One. He asserts that trial counsel placed highly inaccurate, confusing, and prejudicial information in the hands of the jury, which was then used to convict him of a lesser included charge of Trespass in a Habitation.

{¶62} Criminal Rule 29(A) provides: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."

{¶63} "Generally, counsel's failure to make a Crim.R. 29 motion does not constitute ineffective assistance of counsel when the prosecution's case-in-chief links the defendant to the crimes of which he or she is accused." *State v. McCaleb*, 11th Dist. Lake No. 2002-L-157, 2004-Ohio-5940, ¶114 (citation omitted).

{¶64} We have concluded that the state presented sufficient evidence to link appellant to and convict him of the offenses of Menacing by Stalking and Trespass in a Habitation. Accordingly, we further conclude that trial counsel was not deficient, and that appellant was not prejudiced, in the manner alleged.

{¶65} Appellant's fifth assignment of error is without merit.

{¶66} Appellant next argues his trial counsel was ineffective for failing to move for a judgment of acquittal under Crim.R. 29(C) by addressing the inconsistent verdicts with regard to Counts One, Two, and Three.

{¶67} Criminal Rule 29(C) provides:

> If a jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within fourteen days after the jury is discharged or within such further time as the court may fix during the fourteen day period. If a verdict of guilty is returned, the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned, the court may enter judgment of acquittal. It shall not be a prerequisite to the making of such motion that a similar motion has been made prior to the submission of the case to the jury.

{¶68} We have concluded that, even assuming the jury returned inconsistent verdicts, this does not justify the overturning of guilt on the Menacing by Stalking charges. Accordingly, appellant has not demonstrated that he was prejudiced in the manner alleged.

{¶69} Appellant's sixth assignment of error is without merit.

{¶70} The judgment of conviction entered by the Ashtabula County Court of Common Pleas is hereby affirmed.

THOMAS R. WRIGHT, J.,

MARY JANE TRAPP, J.,

concur.