[Cite as *State v. Johnson*, 2025-Ohio-5289.]

# IN THE COURT OF APPEALS OF OHIO
# ELEVENTH APPELLATE DISTRICT
# PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br><br>              Plaintiff-Appellee,<br><br>- vs -<br><br>SHAKIRA R. JOHNSON,<br><br>              Defendant-Appellant. | **CASE NO. 2025-P-0009**<br><br><br>Criminal Appeal from the<br>Court of Common Pleas<br><br><br>Trial Court No. 2024 CR 00069 |

## OPINION AND JUDGMENT ENTRY

Decided: November 24, 2025
Judgment: Affirmed

*Connie J. Lewandowski*, Portage County Prosecutor, and *Kristina K. Reilly*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Wesley C. Buchanan*, 50 South Main Street, Suite 625, Akron, OH 44308 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1} Appellant, Shakira R. Johnson, appeals the judgment of the Portage County Court of Common Pleas convicting her, after a trial to the bench, of theft. She challenges the introduction of testimony relating to witnesses' observations of a video which was not introduced into evidence. She also takes issue with the sufficiency and the manifest weight of the evidence supporting her conviction. We affirm.

{¶2} On January 27, 2024 into the early hours of January 28, 2024, Ms. Johnson was with several friends at Chuggers Bar and Grille in Streetsboro, Ohio. There was live music at the bar, and Johnson was introduced to Kristy Wanyek by Ms.

Wanyek's boyfriend, Justin Ring. Ms. Wanyek is the owner of the bar but was there that evening as a patron. Neither Mr. Ring nor Ms. Wanyek had met Ms. Johnson prior to that evening. Ms. Wanyek, Mr. Ring, and Ms. Johnson, conversed at an "L-shaped" island located near the stage. That evening, Ms. Wanyek was carrying a black Coach purse containing over $1,000 in cash, as well as her personal and business credit cards. Ms. Wanyek and Mr. Ring both acknowledged that the latter would watch the purse.

{¶3}    While Ms. Wanyek was speaking with one of Ms. Johnson's friends, Mr. Ring had the purse in front of him. Mr. Ring decided to leave the bar momentarily to have a cigarette outside. Prior to doing so, he moved the purse closer to Ms. Wanyek. He never saw Ms. Wanyek give the purse to Ms. Johnson or ask her to hold/watch the item. Ms. Wanyek also denied ever asking anyone other than Mr. Ring to watch the purse.

{¶4}    Mr. Ring was gone between five and seven minutes; when he returned, Ms. Wanyek asked him where her purse went. He stated he did not know, but the purse was missing. Mr. Ring, with another employee, went into the back of the bar to review the security camera. According to Mr. Ring, the video showed Ms. Johnson physically grabbing the purse off the table, inspecting the purse, and then placing it into her backpack. He returned to the main area of the bar and discovered the bar's security worker, Wayne Selby, had observed Ms. Wanyek's purse in Ms. Johnson's backpack. He retrieved the item and returned it to Ms. Wanyek. Mr. Ring called police to report the alleged theft.

{¶5}    According to Mr. Selby, he observed the purse in Ms. Johnson's backpack as she was getting ready to exit the bar. When asked how he knew Ms. Johnson was

Case No. 2025-P-0009

preparing to leave, he stated she told him "bye." Mr. Selby also reviewed the security video with a police officer who arrived at the scene.

{¶6} Once the purse was removed from Ms. Johnson's backpack, she became agitated, argumentative, and appeared intoxicated. She attempted to leave, but Mr. Selby explained she was not free to leave the bar. Ms. Johnson subsequently called police, explained she was being held at the bar against her will, and that she had a conceal/carry permit and that she would use it.

{¶7} Police arrived and Officer Aaron Coates watched the video footage with Mr. Selby. Officer Coates stated the video revealed Ms. Johnson picked up the purse, opened it, looked at it, looked around, opened her bag, and placed it in her backpack. The officer also asserted Ms. Johnson zipped her backpack after taking the purse.

{¶8} Ms. Johnson was arrested. In light of Ms. Johnson's representations during her call to police, an officer returned to the bar and located her vehicle. In her vehicle, in plain sight, the officer observed a handgun which was removed from the vehicle. The firearm was loaded.

{¶9} Mr. Ring agreed to upload the video surveillance and provide the police with the evidence. The next day, however, Mr. Ring discovered the file was "corrupted" and the footage was unavailable.

{¶10} Ms. Johnson was indicted for making terroristic threats, a felony of the third degree, in violation of R.C. 2909.23; improperly handling a firearm in a motor vehicle, a felony of the fifth degree, in violation of R.C. 2923.16, which contained a forfeiture specification; and theft, a felony of the fifth degree, in violation of R.C. 2913.02.

Case No. 2025-P-0009

{¶11} Ms. Johnson waived her right to trial by jury and elected to be tried to the bench. She filed a motion in limine and motion to dismiss the indictment due to the loss of the surveillance video footage. The matter proceeded to a bench trial where the trial court overruled the motion to dismiss but took the motion in limine under advisement.

{¶12} At trial, the above facts were adduced and whenever witnesses were asked to testify regarding their observations of the video, defense counsel objected, asserting the testimony was unfairly prejudicial under Evid.R. 403(A). The trial court overruled the objections.

{¶13} After the State rested, Ms. Johnson moved to dismiss the charges, pursuant to Crim.R. 29. The court granted the dismissal on the charges of making terroristic threats and improperly handling a firearm in a motor vehicle but denied the motion as it related to the theft charge. The court subsequently found Ms. Johnson guilty of the theft offense.

{¶14} Ms. Johnson was sentenced to 36 months of community control. This appeal follows.

{¶15} Ms. Johnson raises four assignments of error. We shall address them out of order. For her third and fourth assigned errors, Ms. Johnson contends:

{¶16} "[3.] Shakira received ineffective assistance of counsel.

{¶17} "[4.] The trial court committed plain error by permitting hearsay evidence against Shakira."

{¶18} Under these related assignments of error, Ms. Johnson asserts trial counsel was ineffective for failing to level a hearsay objection to Mr. Ring's and Officer Coates' testimony regarding what they observed on the surveillance video. She

Case No. 2025-P-0009

maintains the video represented an out-of-court statement offered for the truth of the matter asserted for which there is no exception. Ms. Johnson also claims the trial court, by admitting alleged hearsay evidence, committed plain error. We do not agree.

{¶19} "There is a general presumption that trial counsel's conduct is within the broad range of professional assistance." *State v. Andrus*, 2020-Ohio-6810, ¶ 60 (11th Dist.), citing *State v. Bradley*, 42 Ohio St.3d 136, 142-143 (1989). The burden of establishing ineffective assistance of counsel falls upon the appealing defendant. *State v. Robinson*, 2021-Ohio-1064, ¶ 24 (11th Dist.).

{¶20} "In order to prevail on an ineffective assistance of counsel claim, an appellant must demonstrate that trial counsel's performance fell 'below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.'" *Andrus* at ¶ 60, quoting *Bradley* at paragraph two of the syllabus (adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)).

{¶21} With this standard in mind, Ms. Johnson additionally challenges the trial court's alleged failure to exclude the testimony relating to the surveillance video as hearsay. This argument, however, appears to claim that the trial court was required to advocate on behalf of her defense, which is a role the neutral judge may not assume. Nevertheless, the allegation asserts the trial court committed "plain error."

{¶22} "The law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to [her alleged] prejudice, [she] is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be

noted." *Lester v. Leuck*, 142 Ohio St. 91, 92 (1943), quoting *State v. Kollar*, 93 Ohio St. 89, 91 (1915).

{¶23} In *State v. Barnes*, 2002-Ohio-68, the Supreme Court of Ohio set forth strict limitations on what constitutes plain error. "First, there must be an error, i.e., a deviation from a legal rule." (Citations omitted.) *Id.* at ¶ 20. "Second, the error must be plain," i.e., "the error must be an 'obvious' defect in the proceedings." *Id.*, quoting *State v. Sanders*, 2001-Ohio-189, ¶ 82. "Third, the error must have affected 'substantial rights.'" *Barnes* at ¶ 20. The defendant has the burden of demonstrating plain error. *State v. Payne*, 2007-Ohio-4642, ¶ 17. Courts proceed "with great reluctance in employing a plain error analysis in cases that would require the trial court to advocate on behalf of the defendant." (Citation omitted.) *State v. Barnes*, 2013-Ohio-2836, ¶ 41 (11th Dist.).

{¶24} Counsel's objection to witnesses' observations relating to the unavailable surveillance video was premised upon Evid.R. 403(A), which provides that evidence must be excluded where, even though it is relevant, "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Counsel argued the testimony's probative value was substantially outweighed by the danger of unfair prejudice because counsel did not have the opportunity to review the video for exculpatory material. The objection, which was leveled on multiple occasions, was overruled. Ms. Johnson does not claim that this ruling was improper; rather, she contends counsel should have objected on the basis of improper hearsay. We do not agree.

{¶25} Evid R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Thus, "[t]o constitute hearsay, two elements are needed. First, there must be an out-of-court statement. Second, the statement must be offered to prove the truth of the matter asserted. If either element is not present, the statement is not 'hearsay.'" (Citations and footnote omitted.) *State v. Maurer*, 15 Ohio St.3d 239, 262 (1984). Hearsay is ordinarily inadmissible at trial unless it falls under an exception to the rules of evidence. Evid.R. 802.

{¶26} Although we find no case authority in Ohio on point, the definition of hearsay is sufficient to provide a basis for the conclusion that the introduction of a witness' testimony relating to his or her perception of a video which has not been admitted into evidence *is not* inadmissible hearsay. In general, hearsay is that which does not derive its value solely from the credibility of an in-court witness, but rests primarily on the veracity or believability of an out-of-court "statement" made by someone other than that witness. Consequently, hearsay occurs when a witness at trial offers evidence of what someone else stated outside of court and the proponent's use of the evidence asks the finder of fact to assume that the out-of-court declarant had not fabricated the statement or mistook the statement when it was uttered.

{¶27} Considering these points, we find no persuasive basis for the conclusion that the witnesses' detailed description of what they perceived in a video, which they had personally viewed, is a form of hearsay. We acknowledge that the witnesses' testimony might not be the "best evidence" of the facts sought to be established. Nevertheless, a hearsay objection to such evidence is not sustainable.

{¶28} The witnesses testified to their personal observations of Ms. Johnson's conduct that appeared in the surveillance video. There was no testimony that any statements were made on the video, and, in fact, it is unclear whether the video was equipped with corresponding audio. We therefore conclude that it is not hearsay for a witness to testify about the conduct he or she observed on a video because the observed conduct was not a "statement" for hearsay purposes.

{¶29} Accordingly, we hold that one who personally views the content of a video can provide sworn testimony about his or her observations without violating the hearsay rule.

{¶30} Considering this conclusion, counsel's conduct was not ineffective for failing to assert a hearsay objection and, similarly, the trial court did not commit plain error by failing to exclude the same.

{¶31} Ms. Johnson's third and fourth assignments of error lack merit.

{¶32} For her first and second assigned errors, Ms. Johnson contends:

{¶33} "[1.] The evidence was insufficient to convict Shakira of theft.

{¶34} "[2.] Shakira's convictions are against the manifest weight of the evidence."

{¶35} Under these assigned errors, Ms. Johnson claims that because there was no direct evidence to support her conviction, but only testimony relating to what witnesses observed on the surveillance video, the conviction for theft was based on insufficient evidence and, if not, was against the manifest weight of the evidence.

{¶36} "[A] 'sufficiency' argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged

offense." (Citation omitted.) *State v. Windle,* 2011-Ohio-4171, ¶ 25 (11th Dist.) "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.) *State v. Troisi,* 2008-Ohio-6062, ¶ 9 (11th Dist.).

> In contrast, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Wells*, 2012-Ohio-4459, ¶ 56 (11th Dist.), citing *State v. Schlee*, 1994 WL 738452, *5 (11th Dist. Dec. 23, 1994).

{¶37}  Although the tests for sufficiency and manifest weight are different legal concepts, a manifest weight analysis may subsume a sufficiency analysis because a finding that a conviction is supported by the weight of the evidence necessarily includes a finding that the evidence is sufficient. *See State v. Masters*, 2020-Ohio-864, ¶ 17 (11th Dist.) ("When the appellant challenges both the sufficiency and the manifest weight of the state's evidence in an appeal, the appellate court need only address the manifest weight argument because the conclusion that a verdict is not against the manifest weight necessarily entails the additional holding that it is also supported by sufficient evidence."). Accordingly, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of evidential sufficiency.

{¶38}  Ohio courts have "'long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt,'" as circumstantial evidence is accorded

Case No. 2025-P-0009

equal weight and given the same deference as direct evidence. *State v. McKnight*, 2005-Ohio-6046, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990).

{¶39} The primary point of Ms. Johnson's challenges relates to her mistaken position that the testimony of the witnesses regarding what they viewed on the surveillance video was hearsay. Even though this argument lacks merit, we shall conduct the requisite manifest-weight analysis.

{¶40} Ms. Johnson was convicted of theft. R.C. 2913.02(A)(1) provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways . . . [w]ithout consent of the owner or person authorized to give consent. . . ."

{¶41} Here, Mr. Ring and Officer Coates testified to their observations of the video-surveillance footage. Both testified they observed Ms. Johnson pull the purse towards her, look around the bar, look into the purse, and then place the purse in her backpack. Mr. Ring testified he was "110 percent" certain Ms. Johnson was the individual he observed in the video. Further, Officer Coates testified he observed Ms. Johnson zip her backpack closed after taking the purse.

{¶42} Ms. Wanyek testified she only gave Mr. Ring consent to hold her purse. Further, she testified she gave no other person in the bar permission or consent to hold, let alone take, the purse.

{¶43} Finally, Mr. Selby testified he retrieved the purse from Ms. Johnson's backpack as she was apparently preparing to exit the bar. There was no evidence to refute or contradict Mr. Selby's testimony.

Case No. 2025-P-0009

{¶44}   We therefore hold there was sufficient, credible evidence adduced by the State to prove, beyond a reasonable doubt, that Ms. Johnson, with purpose to deprive Ms. Wanyek of her purse, knowingly exerted control over the property without Ms. Wanyek's consent.

{¶45}   Ms. Johnson's first and second assignments of error are without merit.

{¶46}   The judgment of the Portage County Court of Common Pleas is affirmed.


MATT LYNCH, J.,

SCOTT LYNCH, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

---
JUDGE EUGENE A. LUCCI

---
JUDGE MATT LYNCH,
concurs

---
JUDGE SCOTT LYNCH,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-P-0009