[Cite as *State v. Weemes*, 2025-Ohio-2319.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo

    Appellee

v.

Christopher Weemes

    Appellant

Court of Appeals No.   L-24-1137

Trial Court No.  CRB-23-10904

**<u>DECISION AND JUDGMENT</u>**

Decided: June 30, 2025

\* \* \* \* \*

Rebecca Facey, Toledo Prosecuting Attorney, and
Jimmie L. Jones, Assistant Prosecuting Attorney, for appellee.

Henry Schaefer, for appellant.

\* \* \* \* \*

**SULEK, P.J.**

**{¶ 1}** Appellant, Christopher Weemes, appeals a judgment of the Toledo Municipal Court finding him guilty of assault, following a bench trial, and sentencing him to 180 days of incarceration. Because the conviction is not against the weight of the evidence, it is affirmed.

**I. Facts and Procedural History**

**{¶ 2}** On the evening of November 10, 2023, at the Target store on Alexis Road in Toledo, Lucas County, Ohio, Weemes and his fiancée, Ashlee, were involved in a

parking dispute with the victim, A.T., and his fiancée, Alexa.  The dispute became physical resulting in assault charges filed against Weemes.  Weemes pleaded not guilty.

{¶ 3} On April 15, 2024, Weemes filed a notice of intent to present the affirmative defense of self-defense at trial.  The matter then proceeded to a bench trial on April 23 and April 30, 2024.  The parties relied heavily on the parking lot surveillance video with Weemes and A.T. presenting differing versions of the event.

## A. The State's Evidence

### 1. A.T.'s Testimony

{¶ 4} A.T. testified that when he arrived at Target, he backed into a parking spot. He exited the car and walked around the front to help Alexa, his fiancée who was eight months' pregnant, and his two-year old out of the car.  A woman, later identified as Ashlee, exited her vehicle and examined the space between her front bumper and A.T.'s rear bumper.  She walked up to A.T. expressing displeasure with how close he backed up to her car.  Weemes, her fiancé, exited the driver's side, walked between the two cars, and approached them.

{¶ 5} A.T. told Weemes that he just wanted to get his family and go into Target. Weemes told A.T. to get his family and go into the store; however, Weemes hit A.T. and pursued him around the front of his vehicle.  A.T. stated that he could not back away anymore and Weemes was "too close" for him to get into the car so he "got into a little bit of an altercation."  Ashlee grabbed and pulled A.T. by his hooded sweatshirt while Weemes continued hitting him.

2.

**{¶ 6}** A.T. saw Ashlee pulling his pregnant fiancée from the car. A.T. had his firearm out, down at his side, because he feared for his family's safety. A.T. testified that he did not aim it anywhere but that it "went off in the middle of the altercation." He re-holstered it but during the ensuing tussle it flew out and slid across the parking lot. A.T. said that Weemes body-slammed him to the ground and started hitting and kicking him while the two women fought for control of the weapon. The State then played the Target surveillance footage with A.T. narrating.

**{¶ 7}** On cross-examination, A.T. admitted that the State charged him with assault and unlawful discharge of a weapon. The State dismissed the assault charge and A.T. pleaded guilty to an amended charge of disorderly conduct. Counsel questioned A.T. about discharging his weapon. He denied knowing exactly when it discharged, just that it discharged during the altercation. A.T. could not recall whether he told police that it discharged when it hit the ground. He maintained that the gun accidentally discharged.

**{¶ 8}** Defense counsel replayed the surveillance video pausing it several times for questioning. A.T. admitted that Ashlee did not immediately approach and start hitting him and that Weemes did not walk up and start punching him. He denied telling this to police. Counsel played a portion of Toledo Police Officer Brandon Gore's body worn camera ("BWC") footage where A.T. told Gore that when Ashlee initially approached him, Weemes got out of his car and came over and punched him in the face. A.T. agreed that Weemes did not immediately punch him in the face.

3.

**{¶ 9}** A.T. denied throwing the first punch. He stated that his hand went up but that there was no contact. Weemes got in between A.T. and Ashlee; A.T. admitted to punching him. A.T. agreed that he got up and walked away following Weemes' attacking him but stated that he was injured and limping; he had a torn ACL and a Meniscus injury.

**{¶ 10}** During redirect examination, A.T. clarified that he did not point his gun at anyone, he did not point the gun in the air, and he did not pull the trigger. A.T. stated that he did not get back in his car because he did not want to be in a "defenseless" position. He denied pursuing Weemes in the parking lot but admitted to punching Weemes. When A.T. pulled out his gun, Weemes did not run away. A.T. said Weemes called him a "pussy" and commented "really, you have to pull a gun out?"

### 2. A.T.'s Fiancée's Testimony

**{¶ 11}** A.T.'s fiancée, Alexa, testified that A.T. backed into a parking spot at Target, exited, and walked around the front of the car when Ashlee approached complaining that he parked too close to her car. A.T. joked that they had a backup camera so everything was fine. Alexa stated that Ashlee continued approaching him and that Weemes exited the driver's side door, walked in between the cars and up to Ashlee. Both Ashlee and Weemes were hitting A.T. She saw A.T. punch Weemes but that Weemes threw the first punch. Alexa stated that she was very frightened during the incident due to her pregnancy and young son being in the backseat. She said that A.T. made multiple attempts to back away from the situation.

4.

**{¶ 12}** On cross-examination, Alexa admitted that Ashlee distracted her during part of the altercation between Weemes and A.T. She agreed that there was a time lapse between hearing the firearm discharge and retrieving it off the pavement after it fell. Alexa stated that she grabbed the gun to remove it from the situation but that Ashlee got on top of her and following a struggle, took the gun.

## B. The Defense's Evidence

### 1. Weemes' Testimony

**{¶ 13}** Weemes narrated the surveillance video while testifying. He stated that when A.T. backed into the parking spot, it illuminated their dashboard warning lights. Ashlee, his fiancée, got out to check the car for any damage; she told A.T. that he got pretty close.

**{¶ 14}** Weemes exited the vehicle walking up between Ashlee and A.T who were "antagonizing" each other; A.T. backed up. He told A.T. to stop arguing and just go into Target. Weemes stated that A.T. pulled out a gun with his right hand and pointed with his left hand. Weemes put his arms up, stating that it was just a parking spot and telling A.T. to just go into Target. Weemes testified that the gun scared him and that he just wanted A.T. to put it away and end the confrontation.

**{¶ 15}** Weemes stated that Ashlee walked back around A.T.'s car to the passenger side. He heard a gunshot and went to grab Ashlee and get her away from the situation. A.T. then hit Weemes in the face twice and he pushed his arm away. He tried to separate A.T. and Ashlee because they were still arguing and A.T. hit him in the face two more

5.

times. Weemes stated that at that point he had not hit A.T., although A.T. continued hitting him.

{¶ 16} After A.T. punched Weemes 10 to 12 times, he tired of it and "up-cut him" and picked him up and slammed him down. Weemes started hitting A.T. in the ribs just to get him to stop; he also kicked him in the face a few times. Weemes stopped after A.T. apologized. He later learned that the gun fell to the ground and that Alexa and Ashlee wrestled for its control.

{¶ 17} During cross-examination, Weemes agreed that A.T. did not hit their car. Reviewing the video, he also agreed that A.T. backed away from the pair and they followed him around the front of the vehicle. Weemes stated that after A.T. brandished his weapon, he raised his arms up to protect Ashlee by staying in between her and A.T.; he wanted to keep the two separated.

{¶ 18} Weemes denied pushing A.T. at the start of the confrontation. He admitted that after A.T. hit him multiple times he hit and kicked A.T. in order to protect himself. He stopped once A.T. apologized.

{¶ 19} Weemes disputed A.T.'s testimony that the gun accidentally discharged. He believed that A.T. shot at him after he turned away. He was afraid that A.T. would shoot him and his fiancée.

{¶ 20} The State rested its case and Weemes moved for a directed verdict. The court denied the motion finding that the State had presented sufficient evidence that Weemes did not act in self-defense.

6.

## 2. Defense Witnesses

{¶ 21} Eyewitness Jack Kimura testified that on the evening of the incident, he was sitting in the Target parking lot in a parked vehicle with his daughter, niece, and infant son while his wife ran into the store. Kimura heard arguing through his partially open car windows. He turned to speak to his daughter when he heard a gunshot. He looked back and saw A.T. with what looked like a firearm pointed in the air. He called 911. Kimura believed that A.T. was the aggressor and that the other individual was attempting to deescalate the situation. Weemes defended himself after A.T. threw one or two punches.

{¶ 22} Reviewing the Target surveillance video, Kimura acknowledged that he missed the initial interactions between the parties. He also could not confirm that A.T. ever pointed the gun at Weemes.

{¶ 23} Toledo Police Officer Morgan Balboa testified that on November 10, 2023, she and several officers responded to the Target parking lot. Officer Balboa interviewed Weemes and Ashlee. Following multiple interviews of witnesses and suspects and after conferring with other officers at the scene, including the officer who reviewed the surveillance footage, Officer Balboa determined the charges to be filed against each suspect. She charged Weemes and Ashlee with assault, and A.T. with assault and unlawful discharge of a firearm.

{¶ 24} Officer Balboa acknowledged that both Weemes and A.T. claimed self-defense and defense of their significant others. Reviewing her BWC footage, Balboa

7.

agreed that Weemes told her that A.T. fired his weapon and then punched him in the jaw. She affirmed that A.T. claimed that he never pointed the gun at anyone and that it accidentally discharged. During cross-examination, Officer Balboa admitted that she did not speak with A.T.

{¶ 25} Toledo Police Officer Brandon Gore responded to the scene. A.T. admitted to him that he drew his firearm for protection but did not point it at anyone. Gore asked where the gun discharged and A.T. nodded to the area where police found the shell casing. Officer Gore collected the shell casing after police located it next to Weemes' vehicle's front driver's side tire.

{¶ 26} During cross-examination, Officer Gore acknowledged that reviewing the surveillance video he did not observe A.T. pointing a weapon at Weemes or pointing it in the air. He could not discern the exact moment A.T. discharged the firearm. Officer Gore agreed that he characterized A.T.'s gun discharging as "a negligent discharge."

{¶ 27} Following closing arguments and after re-watching the surveillance video and reviewing the self-defense statute, the trial court found:

> [T]here were two statements that were made that I think are indicative of what's going on with this case. One – and these were back to back. One was Mr. Weemes could have walked away at any time. Which is clearly not required under the statute. But the second one is he chose to continue pursuing. At no time, in this video, from the time you got out of your car until it was over, did you stop pursuing [A.T.]. And you were always between him and his wife and kid. You never left his car. You got out of your car – and the whole thing – this is so ridiculous. This whole thing comes from a bad parking job. . . . You walk up, Ms. Wilmoth is in his face. You get right there in his face. And as he retreats backwards, walking backwards across the front of his car, the two of you follow him across the car, down the side of the car, where you say he pulled out the

8.

gun.  You continue to pursue him, as you say he's got the gun out.  He's now standing by the front of your car.  That's when you say he shot.  You pursued him from the front of his car to the front of his car after he's got the gun out.  You just won't leave the guy alone. . .  Now I have no dispute necessarily that he threw the first punch.  But you cannot pursue and pursue and pursue. . . And then you didn't defend yourself.  You kicked the ever living crap out of that guy.  And then you kept going and going and going until Wilmoth, I think it was, pulled you off.  And then you followed him around and pursued him a little more through the parking lot.  So no, there is no duty to retreat.  But you cannot continue pursuing somebody, then claim self-defense.

{¶ 28} The court then sentenced Weemes to the maximum of 180 days, a $1,000 fine, and costs.  The court stayed the sentence pending a post-sentence investigation report.  After determining that the victim had not requested restitution, the court entered a final judgment staying the sentence pending this appeal.

## II. Assignment of Error

{¶ 29} Weemes raises the following assignment of error:

I. The conviction is against the manifest weight of the evidence.

## III. Analysis

{¶ 30} In his sole assignment of error, Weemes asserts that his assault conviction is against the manifest weight of the evidence which supports a self-defense claim.  The State counters that because Weemes created the situation, the State proved that he did not act in self-defense.

{¶ 31} Where a defendant asserts a self-defense claim involving the use of nondeadly force, a he must provide sufficient evidence that "'(1) he was not at fault in creating the situation giving rise to the affray; (2) he had reasonable grounds to believe or

9.

an honest belief that he or she was in imminent danger of bodily harm, and (3) he did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm.'" *State v. Greer*, 2023-Ohio-103, ¶ 33 (6th Dist.), quoting *State v. Paskins*, 2022-Ohio-4024, ¶ 48 (5th Dist.).  In determining whether the defendant presented evidence tending to support a self-defense claim, the trial court considers all of the evidence, from all sources, construed most strongly in the defendant's favor.  *State v. Woodson*, 2022-Ohio-2528, ¶ 79 (6th Dist.), citing *State v. Parrish*, 2020-Ohio-4807, ¶ 14 (1st Dist.).

{¶ 32} Once Weemes presented a viable self-defense claim, it became the State's burden to prove beyond a reasonable doubt, not only the elements of assault in violation of R.C. 2903.13(A), but also that Weemes did not act in self-defense.  *See State v. Agnew*, 2024-Ohio-874, ¶ 22 (12th Dist.). To defeat a self-defense claim, the State need only disprove one of the elements beyond a reasonable doubt.  *State v. Knuff*, 2024-Ohio-902, ¶ 191.

{¶ 33} When reviewing a manifest weight claim involving self-defense, the court reviews the entire record, considers the credibility of witnesses, and determines whether the trier of fact clearly lost its way and created a manifest miscarriage of justice with respect to its finding that the State disproved at least one of the self-defense elements beyond a reasonable doubt.  *State v. Barnes*, 2025-Ohio-1684, ¶ 17 (6th Dist.), citing *State v. Gibson*, 2023-Ohio-1640. ¶ 12 (1st. Dist.).  "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs

10.

heavily against the conviction.'" *State v. Lang*, 2011-Ohio-4215, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 34} Relevant here, the "not at fault" element of a self-defense claim "does not require in all situations that the defendant must have refrained from throwing the first punch or a showing that the defendant played no part in creating the situation giving rise to the affray." *State v. Himes*, 2023-Ohio-3561, ¶ 25 (12th Dist.). "Rather, the first element of a self-defense claim provides that the defendant must not be at fault in creating the situation that gave rise to the affray." *Id.*, citing *State v. Elam*, 2022-Ohio-1895, ¶ 14 (12th Dist.). "This concept is broader than simply not being the immediate aggressor." *Id.* A person may not provoke an assault, or voluntarily enter an encounter, only to then claim a right of self-defense. *Id.*, citing *Elam* at ¶ 15. *See State v. Nichols*, 2025-Ohio-1515, ¶ 25-26 (1st Dist.); *State v. Shartle*, 2025-Ohio-564, ¶ 20 (2d Dist.); *State v. Ramey*, 2024-Ohio-5635, ¶ 14 (12th Dist.).

{¶ 35} Reviewing the evidence and the testimony presented at trial, the court could have reasonably concluded that Weemes was at fault, at least in part, for creating the situation. As stated by the trial court while rending its verdict, the surveillance video demonstrates Weemes' fiancée first approaching A.T. after he parked his car. Weemes inserted himself between his fiancée and A.T. He and his fiancée then pursued A.T. around his car while he retreated, walking backwards. Weemes continued pursuing A.T. after A.T. pulled and discharged his firearm. Weemes then body-slammed A.T. and, while he was on the ground, punched and kicked him until his fiancée pulled him away.

11.

At that point, Weemes walked away and the situation diffused. The State, thus, successfully disproved the "not at fault" self-defense element.

{¶ 36} On review, the court cannot find the trial court lost its way in resolving the parties' conflicting testimony and the trial court's judgment was not against the manifest weight of the evidence. Weemes' assignment of error is not well-taken.

### IV. Conclusion

{¶ 37} Based on the foregoing, the judgment of the Toledo Municipal Court is affirmed. Weemes is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.         _____

                                          JUDGE

Myron C. Duhart, J.

                                    _____

Charles E. Sulek, P.J.          JUDGE
CONCUR.

                                    _____

                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.