[Cite as *State v. Johnson*, 2025-Ohio-5571.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

 PLAINTIFF-APPELLEE,

         CASE NO. 1-25-04

 v.

DAVID JOHNSON,

         **OPINION AND**
         **JUDGMENT ENTRY**

 DEFENDANT-APPELLANT.

---

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR2024 0149**

**Judgment Affirmed**

**Date of Decision: December 15, 2025**

---

**APPEARANCES:**

 *Chima R. Ekeh* **for Appellant**

 *John R. Willamowski, Jr.* **for Appellee**

**MILLER, J.**

{¶1} Defendant-Appellant, David Johnson ("Johnson"), appeals from the February 28, 2025 judgment of the Allen County Court of Common Pleas, following a jury trial and sentencing. A jury found Johnson guilty of multiple offenses, all stemming from him repeatedly firing a gun during a dispute between his family and another family. Johnson argues that the State failed to meet its burden of disproving he acted in self-defense or defense of others. He also argues the trial court committed plain error by failing to instruct the jury on a presumption of self-defense and on the inferior offense of aggravated assault. For the reasons that follow, we affirm.

## I.    FACTS AND PROCEDURAL HISTORY

{¶2} Johnson's trial took place from January 21 to 24, 2025. He was charged with eight offenses: two counts for discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3), with one count as a first-degree felony and the second count as a second-degree felony; and six counts of felonious assault, in violation of R.C. 2903.11(A)(1), as second-degree felonies. All eight counts included a firearm specification pursuant to R.C. 2941.145(A).

{¶3} The charges arose from an incident on June 8, 2024 that took place outside of Johnson's home, where he lived with his wife, two of his children, his mother-in-law, one of his brothers-in-law, that brother-in-law's wife, and their three

children. The incident followed name calling, threats, and taunts between the family of Brandi McCarthy ("McCarthy") or people closely affiliated with her (collectively, the "McCarthy Group") on the one hand and members of Johnson's family on the other hand. At least some of the tension resulted from a recent breakup between Johnson's stepson and McCarthy's daughter, following a lengthy romantic relationship.

{¶4} Twenty-two witnesses testified at the trial, a majority on behalf of the State. McCarthy was the State's main witness. She admitted to starting the dispute on the day of the incident by sending Johnson's wife a meme of a troll. She exchanged voice and text messages with Johnson's wife and mother-in-law throughout the day. Messages from the two women to McCarthy were played for the jury during the trial. The gist of those messages was the women calling McCarthy, and those affiliated with her, derogatory names and cowards and inviting them to their house to fight, where they were waiting on the porch with Johnson.

{¶5} McCarthy also admitted that she and her group wanted to fight and left for Johnson's house. McCarthy drove her car there and parked it in the middle of the street in front of some bushes near Johnson's house. She exited the car with a "tire thumper" in her hand, which she described as similar to a souvenir baseball bat but smaller—about the size of a hairbrush. She indicated her daughter yanked the "tire thumper" out of her hand and threw it away before McCarthy had walked around to the front of the car, where McCarthy started "running [her] mouth" toward

those who were at Johnson's house. (Trial Tr. at 175-178, 229-230). McCarthy proceeded to taunt members of Johnson's family, who were on the porch.

{¶6} According to McCarthy, Johnson's stepson then came outside and threw cans of food at the McCarthy Group. (Johnson's wife testified she had left some trash for pickup at the end of the driveway earlier that day, and that trash included a box of outdated canned goods.) McCarthy believed someone affiliated with her got hit with a can, and some people in the McCarthy Group picked cans up and threw them back toward the house. She was unsure whether any of the cans hit anyone.

{¶7} McCarthy clarified that, at this point, the McCarthy Group was still in the street near her car; no one had gone onto Johnson's lawn or sidewalk. Additionally, McCarthy had nothing with her that could be considered a weapon, and, to her knowledge, no one else had anything in their hands. Johnson then exited his house with a gun in his hand. He came down the porch stairs with the gun pointed in the air and fired it. Johnson then came out to the middle of the street in front of his house and shot at people in the McCarthy Group. At the time, they were in the street, standing close to McCarthy's car. McCarthy testified that, after the shots, she decided to "be stupid and walk up to [Johnson] and tell him, you wanna shoot somebody, shoot me." (*Id*. at 184). Johnson did not shoot her.[1] A couple of

---

[1] Based on the evidence, by that time Johnson had already fired all 13 rounds in his gun.

people in the McCarthy Group were able to get McCarthy away, put her in the car, and they left.

{¶8} McCarthy testified that, although she had not been struck by the gunfire, one person with her was struck in the leg while standing behind her car's passenger door. An additional friend of McCarthy was struck by bullets while standing in front of McCarthy's car. McCarthy fled in her car, but it soon overheated. Upon inspecting it, she saw that her car had been "all shot up." (*Id.* at 187).

{¶9} Detective Steve Stechschulte ("Detective Stechschulte") assisted in investigating the incident. He explained that the location of the shell casings police found in the street was consistent with a statement Johnson made to him that Johnson fired 12 shots while standing in the street in front of his house and how those casings would eject from the gun Johnson used. Identification Officer Greg Adkins ("Officer Adkins") collected evidence and took photographs at the scene, including photos of the shell casings in the street and evidence of where McCarthy's car had been sitting in the street during the altercation (including blood on the road and antifreeze that had leaked). Officer Adkins and Detective Stechschulte explained that the evidence demonstrated Johnson was approximately 65 feet away from the victims (who were near McCarthy's car) at the time he fired the shots.

{¶10} The trial also included the jury watching a videotaped interview by Detective Stechschulte of Johnson from the night of the incident. In it, Johnson gave his description of what had happened. After getting home from work, he was

with his wife while she received messages from people in the McCarthy Group. The messages consisted of derogatory comments and violent threats to his house, his family (including his wife), and himself. In addition, his wife received messages about the McCarthy Group coming over and committing violent acts. Johnson waited up for some time, but eventually went to bed because he had to work early the next morning.

{¶11} According to Johnson, he was half asleep when his wife and other family members told him to get downstairs and "bring your shit" because "they" are all out here and have "ball bats and everything." (Exhibit 74). When he went outside, Johnson heard a gunshot. He clarified that he was pretty confident the gunshot came from his brother-in-law, and he believed it was merely a warning shot.[2] Johnson did not think that gunshot came from anyone in the McCarthy Group, noting that no one said that anyone in the McCarthy Group "had guns or anything." (*Id.*).

{¶12} Johnson then said during the interview that he had a gun in his hand, saw the McCarthy Group approaching his house and family, and someone from his family said that he or she was hit in the face with a bottle. However, he did not know who got hit by the bottle. Johnson then fired a warning shot into the air, but "they wouldn't stop running." (*Id.*). According to Johnson, people kept

---

[2] Other testimony confirmed that Johnson's brother-in-law was the one who had fired the shot, and it was fired as a warning shot. This included the brother-in-law's own testimony that he fired one shot from his gun into the ground.

approaching from behind the car that was parked in the middle of the road. When asked by Detective Stechschulte what weapons he saw, Johnson responded that he saw "a ball bat in one dude's hand" and "one girl had a crowbar or some shit." (*Id.*).

{¶13} According to Johnson, he then went into the street, about four feet from the curb, and fired 12 shots down the road. Including the earlier warning shot, he fired 13 shots altogether, and the clip for his gun only held 13 bullets. When asked how far away McCarthy's car was from him, Johnson said, "in front of the bushes, probably about 20 feet from the house." (*Id.*). Johnson explained that, after he stopped firing, McCarthy ran up to him "acting all crazy" and stupid, "beating the shit out of the ground" and telling him to fight her. (*Id.*). Someone in the McCarthy Group grabbed her, and they left in McCarthy's car. Nothing Johnson said during his interview indicated anyone in the McCarthy Group had entered his house or porch.

{¶14} None of the witnesses for the State who were present for the shooting testified to having a bat or crowbar. Their testimony was that no one in the McCarthy Group had a weapon, apart from throwing the cans of food and McCarthy briefly having the "tire thumper" before her daughter took it from her and discarded it. (*See, e.g.*, Trial Tr. at 267, 289, 314, 342, 380, 401, 434-435, 453). However, similar to Johnson's statement during his interview, some of the Defense witnesses testified to seeing a "club or a tire thumper" in McCarthy's hands, as well as "ball bats" and "crowbars" in the hands of people in the McCarthy Group. Johnson's

stepson testified that he got hit in the head with a can of food. Johnson's mother-in-law testified that her grandchild was nearly hit in the head by a can.

{¶15} After the parties rested, the trial court provided the jury with instructions, which included instructions on self-defense and defense of another. However, the instructions did not include an instruction on the presumption of self-defense in certain circumstances, as set forth in R.C. 2901.05(B)(2), or on the inferior-degree offense of aggravated assault.

{¶16} The jury returned guilty verdicts on all counts. At sentencing, the trial court merged some of the counts. The court then sentenced Johnson to an aggregate prison term of 16 to 19 years in prison. This appeal followed.

## II. ASSIGNMENTS OF ERROR

### First Assignment of Error

**The State did not meet its burden of disproving beyond a reasonable doubt that Johnson acted in self-defense and/or defense of others.**

### Second Assignment of Error

**The trial court committed plain error by failing to instruct the jury on the presumption of self-defense as contained in R.C. 2901.05(B)(2).**

### Third Assignment of Error

**The trial court erred in failing to instruct the jury on the inferior offense of aggravated assault.**

## III.    DISCUSSION

### A.    First Assignment of Error

{¶17} In the first assignment of error, Johnson argues the State failed to meet its burden of disproving his self-defense claim.  At trial, he claimed to have acted in self-defense and in defense of his family members.  He does not dispute that the State proved the elements of the underlying offenses.

### 1.    Applicable Law

{¶18} Self-defense is an affirmative defense.  *State v. Messenger*, 2022-Ohio-4562, ¶ 21.  If proven, it relieves the defendant of criminal liability for the force used by the defendant.  *State v. Bender*, 2024-Ohio-1750, ¶ 21 (3d Dist.).  R.C. 2901.05(B)(1) governs the burden and degree of proof required for a claim of self-defense or defense of another.  By statute, a defendant has the initial burden of *production*, and if he or she meets that burden, then the State has the burden of *persuasion* to disprove the defendant's claim of self-defense (or defense of another) beyond a reasonable doubt:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence.  If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

R.C. 2901.05(B)(1); *see also Messenger* at ¶ 1.

**{¶19}** The elements of a self-defense claim differ depending on whether the defendant employed deadly or non-deadly force to defend against the perceived assailant(s). *State v. Jefferson*, 2025-Ohio-429, ¶ 13 (3d Dist.). Shooting a gun constitutes the use of deadly force. *State v. Forrest*, 2024-Ohio-5861, ¶ 12 (3d Dist.); R.C. 2901.01(A)(2) ("'Deadly force' means any force that carries a substantial risk that it will proximately result in the death of any person"). The elements of a self-defense claim involving deadly force include: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was in the use of such force; and (3) the defendant did not violate any duty to retreat or avoid the danger.[3] *Messenger* at ¶ 14. "Because each element must exist for a self-defense claim to prevail, the state can defeat a self-defense claim by disproving any one of these elements beyond a reasonable doubt." *State v. Knuff*, 2024-Ohio-902, ¶ 191.

**{¶20}** For purposes of our analysis, we opt to focus on the second element relating to the defendant's belief that he was in imminent danger of death or great bodily harm. This element involves "a combined subjective and objective test." *State v. Morris*, 2024-Ohio-2960, ¶ 30 (3d Dist.); *see also State v. Thomas*, 77 Ohio

---

[3] The third element may no longer be required in certain circumstances because of amendments to R.C. 2901.05 and R.C. 2901.09 effective April 6, 2021. *See State v. Murray*, 2025-Ohio-1485, ¶ 26 (2d Dist.) ("R.C. 2901.09 was amended to reflect that the 'duty to retreat' element is no longer required where the person using force in self-defense or defense of another is in a place in which the person lawfully has a right to be").

St.3d 323, 330 (1997) ("self-defense 'is placed on the grounds of the bona fides of defendant's belief, and reasonableness therefor, and whether, under the circumstances, he exercised a careful and proper use of his own faculties'"), quoting *State v. Sheets*, 115 Ohio St. 308, 310 (1926). In determining whether the defendant had reasonable grounds for an honest belief that he or she was in imminent danger of death or great bodily harm, the finder of fact must put itself in the defendant's position. *Thomas* at 330. It must consider the perceived assailant's conduct and determine if such acts and words caused the defendant to reasonably and honestly believe that he or she was about to be killed or suffer great bodily harm. *Id.* "Thus, the jury first must consider the defendant's situation objectively, that is, whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history and conditions at the time of the attack, [he or] she *reasonably* believed [he or] she was in imminent danger." (Emphasis in original.) *Id.* "Then, if the objective standard is met, the jury must determine if, subjectively, this particular defendant had an *honest* belief that [he or] she was in imminent danger." (Emphasis in original.) *Id.* at 331.

{¶21} Significantly, "[t]he defendant is privileged to use that force which is reasonably necessary to repel the attack." *State v. Williford*, 49 Ohio St.3d 247, 249 (1990). Stated another way, part of the second element for a self-defense claim involves showing that the defendant used only that force that is reasonably necessary to repel the attack. *Morris* at ¶ 31. This requires consideration of the

force that was used by the defendant in relation to the danger the defendant believed he or she was in at the time he or she used that force. *State v. Smith*, 2023-Ohio-3015, ¶ 34 (3d Dist.). Consequently, the defense of self-defense is not available if the defendant used more force than was reasonably necessary and the force used was greatly disproportionate to the apparent danger. *State v. Deanda*, 2014-Ohio-3668, ¶ 48 (3d Dist.); *see also State v. Grant*, 2023-Ohio-2720, ¶ 71 (3d Dist.) (if the force used was so disproportionate that it shows a purpose to injure, then self-defense is unavailable).

{¶22} Defense of another requires proof of the same basic elements as self-defense, with the elements altered to reflect defending another instead of oneself. *See Murray*, 2025-Ohio-1485, at ¶ 24 (2d Dist.); *State v. Moss*, 2006-Ohio-1647, ¶ 13 (10th Dist.); *State v. Jeffers*, 2008-Ohio-1894, ¶ 52 (11th Dist.) (the elements for defense-of-another "are substantially similar to those of self-defense, except that the defendant 'stands in the shoes' of the third person"). Thus, for example, the second element becomes that the defendant had a bona fide belief that the person he or she was defending was in imminent danger of death or great bodily harm and that person's only means of escape from such danger was in the defendant's use of such force. *See also State v. Wenger*, 58 Ohio St.2d 336, 339-341 (1979) (because the defendant "stands in the shoes of the person whom he is aiding," the defendant is "only entitled to use as much force as [the person being aided] was privileged to use"). Accordingly, "[i]f a person in good faith and upon reasonable ground

-12-

believes that a family member is in imminent danger of death or serious bodily harm, such person may use reasonably necessary force to defend the family member to the same extent as the person would be entitled to use force in self-defense." *Williford*, 49 Ohio St.3d 247 at paragraph one of the syllabus.

{¶23} The jury's guilty verdicts affirm that the State met its burden of persuading the jury, beyond a reasonable doubt, that Johnson was not acting in self-defense or defense of another when he repeatedly fired the gun while in the street. *Messenger*, 2022-Ohio-4562, at ¶ 26. Consequently, on appeal, the State's burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight-of-the-evidence standard of review. *Id.* at ¶ 26-27. Thus, "we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 2018-Ohio-1562, ¶ 168. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting" evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Yet, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v.*

*Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119; *see also Murray*, 2025-Ohio-1485, at ¶ 27 (2d Dist.).

### 2. Analysis

{¶24} Based on our review of the record, we conclude this was not an exceptional case where the evidence weighed heavily against the jury's conclusion that Johnson's actions were not done in self-defense or defense of another. Specifically, the jury could reasonably conclude from the evidence that the State at least disproved the second element of those defenses beyond a reasonable doubt. *Knuff*, 2024-Ohio-902, at ¶ 191 (the State need only disprove one of the elements beyond a reasonable doubt). The evidence presented at trial permitted the jury to decide that Johnson did not reasonably and honestly believe that he, or anyone else in his family, was in imminent danger of death or great bodily harm when he repeatedly fired his gun in the street. *See Thomas*, 77 Ohio St.3d at 330; *Williford*, 49 Ohio St.3d 247 at paragraph one of the syllabus. Alternatively, the evidence presented also permitted the jury to decide that the degree of force Johnson used was more than that reasonably necessary to defend himself and his family at the time he repeatedly fired his gun. *See Williford*, 49 Ohio St.3d at 249; *Wenger*, 58 Ohio St.2d at 339-341.

{¶25} Johnson admitted during his interview that he was in the street when he fired in the direction of the McCarthy Group. It is also undisputed that Johnson, after firing the warning shot, emptied the entire clip of bullets, shooting 12 times in

the direction of McCarthy and those with her. Although Johnson estimated that the people he was shooting at were "probably about 20 feet from the house," trial exhibits and testimony from Officer Adkins and Detective Stechschulte demonstrated the victims were approximately 65 feet away from Johnson at the time he repeatedly fired the gun in their direction. Furthermore, the evidence does not support that anyone Johnson was purportedly defending was reasonably near anyone in the McCarthy Group at the time he fired his gun. *See Moss*, 2006-Ohio-1647, at ¶ 6, 15-18 (10th Dist.) (affirming jury's rejection of defense-of-another claim where the person defendant was defending was "a significant distance from" the victim).

{¶26} Although there was conflicting testimony between Johnson that people had "ball bats" and "crowbars" and McCarthy who indicated that no one in her group had any weapon whatsoever at the time of the shooting, there was no evidence that anyone in the McCarthy Group had a gun. "A reasonable jury could determine that shooting at a person who [had] not displayed a firearm was disproportionate to the perceived threat." *See Morris*, 2024-Ohio-2960, at ¶ 35-36 (3d Dist.). A trier of fact is free to believe or disbelieve a witness's testimony or to accept part of what a witness testified to and reject the rest. *Bender*, 2024-Ohio-1750, at ¶ 25 (3d Dist.); *see also Forrest*, 2024-Ohio-5861, at ¶ 51 (3d Dist.) (it is within the province of the jury to parse out the credible portions of the witnesses' testimonies). Additionally, a verdict is not against the manifest weight of the

evidence because the finder of fact chose to believe the State's evidence rather than the defendant's version of the events. *Jefferson*, 2025-Ohio-429, at ¶ 48 (3d Dist.).

**{¶27}** Johnson chose to repeatedly fire a gun at the victims, acting with an amount of force that a reasonable jury could find was more than Johnson or anyone he was defending would have been justified in using to defend themselves at that time. *See Moss*, 2006-Ohio-1647, at ¶ 15 (10th Dist.). Thus, it was reasonable for the jury to conclude that the degree of force used by Johnson was not warranted under the circumstances and was greatly disproportionate to the apparent danger at that time. *Deanda*, 2014-Ohio-3668, at ¶ 48 (3d Dist.); *see also Bender*, 2024-Ohio-1750, at ¶ 31-34 (3d Dist.) (where defendant brought a knife to a fist fight and seriously injured the victim, the State disproved second element of self-defense claim, given that the weight of the evidence demonstrated the defendant's use of deadly force was not reasonably necessary and proportionate to the apparent danger).

**{¶28}** Having reviewed the record, weighed the evidence and all reasonable inferences, and considered the credibility of witnesses, we find that the jury did not clearly lose its way and create a manifest miscarriage of justice in resolving conflicts in the evidence and concluding Johnson's actions were not in self-defense or in defense of another.

**{¶29}** Johnson's first assignment of error is overruled.

## B.      Second Assignment of Error

**{¶30}** In the second assignment of error, Johnson asserts that he was entitled to a jury instruction on a presumption of self-defense and that the trial court erred in failing to give such an instruction. We disagree. Johnson was not entitled to such an instruction because none of the statutorily required conditions warranting the instruction were established by the evidence.

### 1.      Applicable Law and Standard of Review

**{¶31}** R.C. 2901.05(B) contains a presumption that a person acted in self-defense in certain circumstances, as well as exceptions to that presumption:

> (2) Subject to division (B)(3) of this section, a person is presumed to have acted in self-defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force.
>
> (3) The presumption set forth in division (B)(2) of this section does not apply if either of the following is true:
>
>> (a) The person against whom the defensive force is used has a right to be in, or is a lawful resident of, the residence or vehicle.
>>
>> (b) The person who uses the defensive force uses it while in a residence or vehicle and the person is unlawfully, and without privilege to be, in that residence or vehicle.

R.C. 2901.05(B)(2), (3). The term "residence" means a dwelling in which a person temporarily or permanently resides or is visiting as a guest. R.C. 2901.05(D)(3). In

turn, the term "dwelling" includes, among other things, a porch attached to that dwelling. *See* R.C. 2901.05(D)(2). A related statute provides,

> (B) For purposes of any section of the Revised Code that sets forth a criminal offense, a person has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be.
>
> (C) A trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense, defense of another, or defense of that person's residence reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety.

R.C. 2901.09(B), (C); *see also State v. McLaurin*, 2025-Ohio-1213, ¶ 22-23 (3d Dist.) (explaining that the "castle doctrine" is codified partially in R.C. 2901.05 and partially in R.C. 2901.09).

**{¶32}** Johnson concedes that we apply a plain-error standard of review for this assignment of error, given that his trial counsel did not proffer instructions, or object to the lack of instructions, concerning a presumption of self-defense. *See also Williford*, 49 Ohio St.3d at 252. To establish plain error, an appellant must demonstrate (1) an error, i.e., a deviation from a legal rule occurred; (2) the error is plain, i.e., it must be an obvious defect in the proceeding; and (3) the error affected substantial rights, i.e., the trial court's error affected the outcome of the proceeding. *State v. Morgan*, 2017-Ohio-7565, ¶ 2, 36-37, 52. The Supreme Court of Ohio has admonished courts that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a

manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. Even when an appellant has met his or her burden of demonstrating all three requirements, "a court still has discretion whether or not to correct the error." *State v. Lynn*, 2011-Ohio-2722, ¶ 14.

### 2. Analysis

{¶33} As shown above, the presumption only applies "if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force." Johnson asserts that people in the McCarthy Group "were in the process of unlawfully and without privilege entering his front porch." (Appellant's Brief at 15). However, the portions of the transcript he cites in support (and the record as a whole) do not support this assertion. For example, both Johnson's mother-in-law and McCarthy testified where people in the McCarthy Group actually were in relation to the porch. Neither woman's testimony corroborates Johnson's claim.

{¶34} Johnson's second assignment of error is overruled.

### C. Third Assignment of Error

{¶35} In the third assignment of error, Johnson asserts the trial court erred by not instructing the jury on aggravated assault, as an inferior-degree offense to felonious assault.

### 1.    Standard of Review and Applicable Law

**{¶36}** As with the second assignment of error, Johnson concedes we review the issue for plain error because his trial counsel neither requested such an instruction nor objected to its omission. We previously set forth the plain-error standard in our analysis of the second assignment of error.

**{¶37}** Johnson was charged with felonious assault under R.C. 2903.11(A)(1), which provides, "No person shall knowingly . . . [c]ause serious physical harm to another or to another's unborn." On the other hand, aggravated assault is committed when a person knowingly causes serious physical harm to another or to another's unborn "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." R.C. 2903.12(A)(1). Thus, the two crimes are similar, with aggravated assault having an additional mitigating element. Aggravated assault is an inferior-degree offense of felonious assault. *Bender*, 2024-Ohio-1750, at ¶ 57 (3d Dist.); *State v. Lloyd*, 2021-Ohio-1808, ¶ 24, 27 (8th Dist.) (an offense is an inferior degree of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements). "'An instruction on aggravated assault is appropriate when the evidence supports a conviction for felonious assault, but the assault resulted from serious provocation by the victim.'" *Bender*, 2024-Ohio-1750, at ¶ 57 (3d Dist.), quoting *State v.*

*Morrow*, 2002-Ohio-6527, ¶ 8 (2d Dist.) (deciding the trial court did not abuse its discretion by failing to instruct the jury on the inferior-degree offense of aggravated assault, where the defendant requested an instruction on both aggravated assault and self-defense).[4]

{¶38} Given the defendant's right, through counsel, to waive instructions on lesser-included offenses and inferior-degree offenses, a trial court not providing a jury instruction on a lesser-included or inferior-degree offense does not amount to plain error when the decision not to request such a jury instruction may be deemed to be part of a reasonable trial strategy. *State v. Godsey*, 2024-Ohio-629, ¶ 37 (3d Dist.); *State v. Davis*, 2004-Ohio-3242, ¶ 18 (9th Dist.); *Lloyd* at ¶ 40-41. Put differently, a trial court does not commit plain error in failing to provide an unrequested jury instruction where the decision not to request the instruction could be considered trial strategy. *Godsey* at ¶ 37; *see also State v. Clayton*, 62 Ohio St.2d 45, 47-48 (1980) (where it is evident that trial counsel's strategy was to seek a total acquittal for his client, and therefore not request an instruction on a lesser-included offense, appellant cannot claim on appeal the protection of Crim.R. 52(B) to negate the effect of that tactical decision).

---

[4] In *Bender*, we referenced a "disaccord" in the law concerning whether a defendant who asserts self-defense is entitled to both an instruction on self-defense and on lesser-included offenses (or inferior-degree offenses), or instead must choose between the two. *Bender*, 2024-Ohio-1750, at ¶ 61-63 (3d Dist.). As in *Bender*, "we need not resolve such disaccord in this case." *Id.* at ¶ 63; *see also State v. Jones*, 2019-Ohio-4862, ¶ 85-87 (1st Dist.) (no plain error in trial court failing to sua sponte instruct the jury on voluntary manslaughter; it was within the realm of trial strategy not to request such an instruction in favor of trying for a complete acquittal, and a defense of complete innocence could be hindered by an instruction on the lesser-included offense of voluntary manslaughter).

**2.    Analysis**

**{¶39}** Johnson's trial counsel did not request an instruction on aggravated assault as an inferior-degree offense.  By proceeding on a theory of self-defense at trial and not requesting an aggravated assault instruction, Johnson elected to seek a complete acquittal on the felonious assault charges instead of risk a conviction on the inferior-degree offense of aggravated assault.  This is evidenced by Johnson's attorney asserting in closing arguments that "all this case is, is an issue of self-defense."  Although that election proved to be unsuccessful, it may be deemed a reasonable trial strategy.  Indeed, Johnson does not argue this strategy was unreasonable, he does not allege ineffective assistance of counsel in this appeal, and he acknowledges that an instruction on aggravated assault is generally incompatible with an instruction on self-defense.  Pursuing a complete acquittal defense strategy at trial, versus seeking an instruction on a lesser-included offense, can be a reasonable trial strategy.  *See Godsey*, 2024-Ohio-629, at ¶ 38 (3d Dist.); *Lloyd*, 2021-Ohio-1808, at ¶ 34 (8th Dist.).

**{¶40}** Accordingly, the lack of a jury instruction on aggravated assault as an inferior-degree offense to the felonious assault charges was not plain error.  *Godsey*, 2024-Ohio-629, at ¶ 37-38 (3d Dist.); *Clayton*, 62 Ohio St.2d at 47-48.  Given the circumstances, any potential error was not "plain" because not giving an unrequested jury instruction on an unindicted offense was not "an obvious defect in

the proceeding." *Morgan*, 2017-Ohio-7565, at ¶ 36; *see also Clayton*, 62 Ohio St.2d at 47 fn. 2.

**{¶41}** Johnson's third assignment of error is overruled.

## IV.  CONCLUSION

**{¶42}** For the foregoing reasons, Johnson's assignments of error are overruled.  Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Allen County Court of Common Pleas.

***Judgment Affirmed***

**WALDICK, P.J. and ZIMMERMAN, J., concur.**

Case No. 1-25-04

# JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
Mark C. Miller, Judge


_____
Juergen A. Waldick, Judge


_____
William R. Zimmerman, Judge

DATED:
/jlm