[Cite as *State v. Alexander*, 2026-Ohio-522.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

VINCENT D. ALEXANDER,

    DEFENDANT-APPELLANT.

CASE NO. 5-25-25

OPINION AND
JUDGMENT ENTRY

Appeal from Hancock County Common Pleas Court
Trial Court No. 2024 CR 60

Judgment Affirmed

Date of Decision:  February 17, 2026

APPEARANCES:

    *W. Alex Smith* for Appellant

    *Sean M. Abbott* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Vincent D. Alexander ("Alexander"), appeals the July 23, 2025 judgment entry of sentencing of the Hancock County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from an assault that occurred on the evening of January 24, 2024 in a moving vehicle in Findlay, Ohio. While the victim, V.C., was driving, Alexander punched her at least two times in the face. After V.C. fled from the vehicle, Alexander drove off—leaving an injured V.C. on the side of the road. A police officer arrived on the scene to find V.C. with a swollen and bloodied face. V.C. suffered an orbital fracture and lacerated lip as a result of the assault.

{¶3} On March 5, 2024, the Hancock County Grand Jury indicted Alexander on Count One of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony, and Count Two of grand theft of a motor vehicle in violation of R.C. 2913.02(A)(1), a fourth-degree felony. Alexander appeared for arraignment on April 10, 2024 and entered pleas of not guilty to both counts in the indictment. He subsequently filed a notice of self-defense on April 22, 2024.

{¶4} The case proceeded to a jury trial on April 7 and 8, 2025. At trial, as relevant to the facts of this appeal, the State presented the testimony of V.C. and the responding police officer, while Alexander testified in his own defense.

{¶5} V.C. testified that Alexander called her earlier in the day asking for a ride. Even though she and Alexander had broken up a month prior, V.C. agreed to travel to Columbus to pick up Alexander and transport him to the Findlay area. Per his request, V.C. dropped Alexander off at Riverside Park in Findlay. Approximately 15 minutes later, Alexander called V.C. again asking for a ride. V.C. met Alexander at a gas station. While V.C. was driving, Alexander accused her of cheating on him. V.C. testified that she denied Alexander's allegations "and he just started punching on me." (Apr. 7, 2024 Tr. at 180). "He just kept punching, just punching on me." (*Id.* at 181). V.C. further testified that she was able to slow the vehicle down and pull off to the side of the road. Alexander pinned her down with his forearm and "started punching me some more." (*Id.*). V.C. removed her seatbelt and fled from the vehicle. V.C. testified that Alexander followed her and continued punching her outside of the vehicle. At one point, V.C. fell and Alexander kicked her. When a passing vehicle stopped, Alexander "jumped in [V.C's] car" and "took off." (*Id.* at 182). The driver of the stopped vehicle called 911.

{¶6} Officer Kyle Sours of the Findlay Police Department was dispatched to the scene. Officer Sours testified that he encountered V.C. crying on the side of the road with bloody clothing, a swollen face, a dark purple left eye, and a bleeding nose. Officer Sours called for medical assistance and an ambulance transported V.C. to the hospital. A video from the body camera worn by Officer Sours depicting his interaction with V.C. was played for the jury. Officer Sours further testified that

he followed the ambulance to the hospital where he took photos of V.C.'s injuries. The photos taken by Officer Sours were admitted into evidence.

{¶7} Alexander testified that V.C. owns a handgun and "[w]hen she was leaving, going places, she would take her gun with her." (Apr. 8, 2025 Tr. at 292). Alexander further testified that it was common for V.C. to leave the handgun in the vehicle. With respect to what took place on the night of the incident, Alexander testified that he and V.C. were talking and she started to get loud. "She was - - when I asked a couple of questions, she - - she - - she got irritated, and - - and she said, I don't know what the hell you're talking about, and that's when it got - - it got out of hand." (*Id.* at 302). Alexander was concerned about V.C.'s "tone of voice" and "[t]hat she had her gun." (*Id.* at 302-303). Alexander testified that V.C. "was reaching . . . to her left" and he believed she was reaching into the door pocket for her handgun. (*Id.* at 303). When asked to explain what happened next, Alexander testified as follows:

> Well, I went to go reach for her arm, I was like what are you doing? And when I said, what you doing, she - - she got to jerking back. And when she jerked back, I didn't see - - I didn't - - I just punched her twice. And then when I realized she - - she - - she stopped, I stopped. She was getting out of the car, I was getting out of the car. And when she - - when she was coming around the van, I was waiting, and then I went around the front of the van, and I got in the car. I didn't know if she had her gun or not, because I was just watching which way she was going. And she took off running, and I jumped in the van.

(*Id.* at 304-305). Alexander admitted to punching V.C. twice in the face. He was asked on cross-examination, "You hit her, never seeing a gun?" (*Id.* at 321). Alexander answered, "I didn't see no gun, no." (*Id.*).

{¶8} On April 8, 2025, the jury found Alexander guilty as to Count One of felonious assault, a second-degree felony, and guilty as to a lesser-included offense on Count Two of unauthorized use of a motor vehicle, a misdemeanor of the first degree. On July 10, 2025, the trial court sentenced Alexander to a minimum term of eight years in prison to a maximum term of 12 years in prison on Count One.[1] The trial court further sentenced Alexander to a jail term of 180 days for unauthorized use of a motor vehicle, to be served concurrently with the sentence imposed on Count One.

{¶9} Alexander filed his notice of appeal on August 4, 2025, raising a single assignment of error for our review.

**Assignment of Error**

**The Jury Erred When It Did Not Find That Vincent Alexander Acted In Self-Defense.**

{¶10} In his sole assignment of error, Alexander argues that his felonious-assault conviction is against the manifest weight of the evidence. According to Alexander, he "acted under a reasonable belief of imminent bodily harm when the altercation with [V.C.] occurred." (Appellant's Brief at 5). Alexander contends that

---

[1] The judgment entry of sentencing was filed on July 23, 2025.

the jury lost its way because the State failed to meet its burden of disproving his self-defense claim.

*Standard of Review*

**{¶11}** In determining whether a verdict is against the manifest weight of the evidence, a reviewing court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Nonetheless, a reviewing court must allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

**{¶12}** When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Analysis*

**{¶13}** Alexander was convicted of felonious assault in violation of R.C. 2903.11, which provides, in its relevant part, that "[n]o person shall knowingly . . .

[c]ause serious physical harm to another . . . ." R.C. 2903.11(A)(1). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶14} "'Serious physical harm to persons' means," as relevant to this case, "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;" "[a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;" or "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(c)-(e).

{¶15} On appeal, Alexander does not dispute that the evidence presented at trial establishes the elements of felonious assault. Rather, he contends that the jury lost its way by rejecting his claim of self-defense. That is, he argues that his felonious-assault conviction is against the manifest weight of the evidence because the State failed to satisfy its burden of disproving at least one of the elements of self-defense beyond a reasonable doubt.

{¶16} Self-defense is an affirmative defense. *State v. Messenger*, 2022-Ohio-4562, ¶ 21. If proven, it relieves the defendant of criminal liability for the force used by the defendant. *State v. Bender*, 2024-Ohio-1750, ¶ 21 (3d Dist.). R.C.

2901.05(B)(1) governs the burden and degree of proof required for a claim of self-defense as follows:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

Thus, "[b]y statute, a defendant has the initial burden of *production*, and if he or she meets that burden, then the State has the burden of *persuasion* to disprove the defendant's claim of self-defense . . . beyond a reasonable doubt." (Emphasis in original.) *State v. Johnson*, 2025-Ohio-5571, ¶ 18 (3d Dist.).

{¶17} "The elements of self-defense differ depending on whether the defendant used deadly or non-deadly force to defend himself." *State v. Bagley*, 2014-Ohio-1787, ¶ 15 (3d Dist.).

> Where a defendant asserts a self-defense claim involving the use of nondeadly force, a [defendant] must provide sufficient evidence that "'(1) he was not at fault in creating the situation giving rise to the affray; (2) he had reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm, and (3) he did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm.'"

*State v. Weemes*, 2025-Ohio-2319, ¶ 31 (6th Dist.), quoting *State v. Greer*, 2023-Ohio-103, ¶ 33 (6th Dist.), quoting *State v. Paskins*, 2022-Ohio-4024, ¶ 48 (5th Dist.). Generally, "a person is privileged only to 'use as much force as is reasonably

necessary to repel [an] attack.'" *State v. Crowe*, 2019-Ohio-3986, ¶ 16 (3d Dist.), quoting *State v. Shine-Johnson*, 2018-Ohio-3347, ¶ 61 (10th Dist.). "In determining whether the defendant presented evidence tending to support a self-defense claim, the trial court considers all of the evidence, from all sources, construed most strongly in the defendant's favor." *Weemes* at ¶ 31. "'The elements of self-defense are cumulative, and a defendant's claim of self-defense fails if any one of the elements is not present.'" *State v. Passmore*, 2023-Ohio-3209, ¶ 29 (3d Dist.), quoting *State v. Ridley*, 2022-Ohio-2561, ¶ 15 (1st Dist.).

**{¶18}** Once a defendant presents a viable self-defense claim, the State bears the burden to prove, beyond a reasonable doubt, that the defendant did not act in self-defense. *Weemes* at ¶ 32. Thus, to defeat a self-defense claim, "the State must 'disprove at least one of the elements of self-defense beyond a reasonable doubt.'" *Passmore* at ¶ 29, quoting *State v. Carney*, 2020-Ohio-2691, ¶ 31 (10th Dist.).

**{¶19}** On appeal, Alexander contends that the greater weight of the evidence supports his claim of self-defense. Specifically, he argues that the State failed to disprove that he had a reasonable and honest belief that he was in imminent danger of bodily harm. In support of this argument, Alexander points to the testimony of V.C.'s children who testified that their mother has a handgun and "she sometimes carried it in her purse when leaving home." (Appellant's Brief at 7). Alexander asserts that his belief of imminent danger was objectively reasonable because V.C. is known to carry a handgun when leaving home and she "became agitated and

reached toward the driver's side door pocket." (*Id.* at 8). Consequently, Alexander argues that his version of events—that he was reacting to a reasonable belief that V.C. was reaching for a handgun—is more credible than the State's theory of the case.

{¶20} Here, V.C. testified on cross-examination that she owns a handgun and keeps it "[i]n my drawer." (Apr. 7, 2025 Tr. at 202). When asked if she carried the handgun with her on the night of the assault, V.C. answered "No." (*Id.*). V.C. further testified that she "never carried" the handgun. (*Id.* at 203). V.C.'s son and daughter also testified at trial. On cross-examination, V.C.'s son was asked if he had ever seen his mother "brandish" or "hold" the handgun. (*Id.* at 240). V.C.'s son replied, "Not really. She kept it mostly in her purse and in her drawer." (*Id.*). Similarly, V.C.'s daughter was asked on cross-examination about her mother's handgun. When asked where her mother kept the handgun, V.C.'s daughter answered, "Sometimes in her purse and sometimes in her drawer." (*Id.* at 263). Alexander contends that the discrepancy between V.C.'s testimony and the testimony of her children "undermines [V.C.'s] claim the gun was always secured and supports the objective reasonableness of Mr. Alexander believing the firearm could be accessible within the vehicle during their altercation." (Appellant's Brief at 7-8).

{¶21} "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for

the trier of fact." *State v. Banks*, 2011-Ohio-5671, ¶ 13 (8th Dist.). In this case, the jury was presented with conflicting accounts of what transpired in the vehicle. V.C. testified that Alexander punched her repeatedly while she was driving and after she stopped the vehicle. V.C. further testified that, after she fled from the vehicle, Alexander pursued her and continued the assault outside of the vehicle. Video evidence of V.C.'s bloodied appearance at the side of the road and photos taken at the hospital of her injuries were admitted into evidence. Notwithstanding Alexander's contention that his reasonable belief that V.C. was reaching for a handgun justified him in punching her, "we are mindful of the jury's 'superior first-hand perspective in judging the demeanor and credibility of witnesses.'" *State v. Suffel*, 2015-Ohio-222, ¶ 33 (3d Dist.), quoting *State v. Phillips*, 2014-Ohio-5162, ¶ 125 (10th Dist.). *See State v. Rawlins*, 2024-Ohio-1733, ¶ 35 (3d Dist.) (stating that a verdict is not against the manifest weight of the evidence because the jury chose to believe the State's witnesses rather than the defendant's version of events). Consequently, the trier of fact was free to believe V.C.'s testimony that Alexander initiated the physical violence or to disbelieve Alexander's testimony that he was reacting to a perceived threat.

{¶22} Additionally, because the elements of self-defense are cumulative, the State was required to disprove at least one of the cumulative elements of self-defense beyond a reasonable doubt—most notably in this case, that Alexander was at fault for creating the situation or that he used force in excess of what was

reasonably necessary. Regarding the element of fault, "'Ohio courts have long recognized that a person cannot provoke [an] assault or voluntarily enter an encounter and then claim a right of self-defense.'" (Emphasis deleted.) *State v. Woodson*, 2022-Ohio-2528, ¶ 82 (6th Dist.), quoting *State v. Nichols*, 2002 Ohio App. LEXIS 329, *7 (4th Dist. Jan. 22, 2002). In this case, while Alexander argues that he was defending himself because he believed V.C. was reaching for a handgun, his own trial testimony undermines this element. Indeed, Alexander admitted that he never saw a handgun. He further admitted that he punched V.C. two times in the face.

{¶23} Moreover, beyond Alexander's admission of fault, the greater weight of the evidence further supports the conclusion that he used more force than was reasonably necessary to repel the perceived threat. A defendant may only use "that force which is reasonably necessary to repel the attack." *State v. Williford*, 49 Ohio St.3d 247, 249 (1990). The affirmative defense of self-defense is unavailable if the defendant uses more force than is reasonably necessary or if the force used is so disproportionate that it shows a purpose to injure. *State v. Grant*, 2023-Ohio-2720, ¶ 71 (3d Dist.).

{¶24} Therefore, based on our review of the record, we conclude that the trier of fact did not lose its way by rejecting Alexander's claim of self-defense. Importantly, the jury heard all of the testimony and found the State's witnesses and evidence to be more credible than Alexander's. Accordingly, weighing the evidence

and all reasonable inferences, we conclude the jury did not clearly lose its way and create such a manifest miscarriage of justice that Alexander's felonious-assault conviction must be reversed.

{¶25} Alexander's sole assignment of error is overruled.

{¶26} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI and WALDICK, J.J., concur.**

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignment of error is overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  *See* App.R. 30.

William R. Zimmerman, Judge

John R. Willamowski, Judge

Juergen A. Waldick, Judge

DATED:
/hls