[Cite as *State v. Kashat*, 2026-Ohio-2254.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,
CITY OF RAVENNA,

        Plaintiff-Appellee,

- vs -

DONNA M. KASHAT,

        Defendant-Appellant.

CASE NO. 2025-P-0054

Criminal Appeal from the
Municipal Court, Ravenna Division

Trial Court No. 2024 CRB 01528 R

---

## OPINION AND JUDGMENT ENTRY

Decided: June 15, 2026
Judgment: Affirmed

---

*Connie J. Lewandowski*, Portage County Prosecutor, and *Vincent V. Vigluicci* and *Timothy P. Bogner*, Assistant Prosecutors, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Mark R. Majer*, 1750 Woodstock Road, Gates Mills, OH 44040 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1} Appellant, Donna M. Kashat, appeals the judgment of the Portage County Municipal Court, Ravenna Division, convicting her, after a jury trial, of domestic violence. Ms. Kashat challenges various aspects of her conviction, including the sufficiency and weight of the evidence, her trial counsel's effectiveness, and the trial court's determination that she was not entitled to a jury instruction on self-defense. We affirm.

{¶2} On the night of September 6, 2024, Mijo Dejanovic, Ms. Kashat's husband and the victim in this matter, was working at his computer when a vehicle pulled into the

driveway of his residence. He was not expecting a visitor. Mr. Dejanovic quickly realized his wife had arrived at the home. The couple were married in Ohio in 2019, but they lived remotely from one another, Mr. Dejanovic in Portage County, Ohio, and Ms. Kashat in California. While the couple often spent periods of time together at each other's residences, living together "here and there," Mr. Dejanovic was not aware that Ms. Kashat would be visiting him on the evening at issue. Mr. Dejanovic, however, stated that he and Ms. Kashat had discussed moving in together permanently.

{¶3}    Mr. Dejanovic answered the door, and Ms. Kashat entered, with a backpack on backwards, which Mr. Dejanovic found odd. Ms. Kashat greeted the cats in the residence. She would not immediately answer, however, why she was suddenly visiting. Ms. Kashat inquired into a package that she ordered and sent to the Ohio residence. According to Ms. Kashat, she was planning on moving to Ohio to live with Mr. Dejanovic and thus sent the object to Ohio. At first, Mr. Dejanovic was apparently unaware of the package to which Ms. Kashat was referring. Mr. Dejanovic did not know Ms. Kashat had sent a package to the home; he did recognize, eventually, that a parcel addressed to Ms. Kashat had recently arrived.

{¶4}    Ms. Kashat approached Mr. Dejanovic's computer station and "grabbed" his phone. She indicated that if he gave her the package, she would return his phone. Mr. Dejanovic approached Ms. Kashat, grabbed the backpack (which was located on Ms. Kashat's front), placed his hand in the front pocket, and obtained his phone. While in the process of retrieving his phone, he also obtained Ms. Kashat's phone.

{¶5}    Ms. Kashat became upset, and Mr. Dejanovic moved six or seven feet away from her. At that point, according to Mr. Dejanovic, Ms. Kashat pulled a can of Raid wasp

spray from her belongings and sprayed him directly in the face. He retreated to the kitchen and rinsed his eyes with water. Ms. Kashat apparently sprayed him again in the back of the head.

{¶6} Mr. Dejanovic began recording the incident on his cell phone. The State submitted a five-minute video taken from Mr. Dejanovic's phone depicting the encounter after he was sprayed. Ms. Kashat subsequently drove away and returned with police. Mr. Dejanovic provided police with a statement, Ms. Kashat's phone, and credit card. He then went to the emergency room to have his eyes and face medically treated.

{¶7} Ms. Kashat agreed that she arrived at the residence and entered with an interest in obtaining a package. She, however, repeatedly stated that the residence was "our" residence and that she had moved many of her belongings into the home. When Mr. Dejanovic would not give her the package, she admitted taking his phone from his computer station and placing the item in her backpack (which she was wearing backwards). When Mr. Dejanovic obtained her phone, Ms. Kashat stated he pushed and pulled her. She indicated that because he would not "get off" of her, she sprayed him with "wasp spray."

{¶8} Ms. Kashat stated Mr. Dejanovic washed his face for "ten minutes or so." Then, she maintained, Mr. Dejanovic "jump scared" her. While she acknowledged she sprayed the insecticide toward Mr. Dejanovic, she stated she did not hit him. She observed that she felt like a "hostage in [her] own home." Ms. Kashat claimed that Mr. Dejanovic hit her breasts and the back of her arms during the incident. She asserted she thought she was "going to die" because "our house is very remote."

Case No. 2025-P-0054

{¶9} Ms. Kashat located the spray in her backpack and sprayed Mr. Dejanovic in the face. Although Ms. Kashat stated she had "sprayed [wasp spray] in her face accidentally before[,] it will not bring you to your knees." Nevertheless, Ms. Kashat testified Mr. Dejanovic washed his eyes for "like ten minutes." She commented that "[h]e washed for a long time, and rightfully so. He should have." Even though Ms. Kashat stated that she did not feel threatened after the initial spray, she made the decision to spray Mr. Dejanovic a second time. Although she thought the spray did not hit him, she stated, "I'm standing there hostage in my own home."

{¶10} Ms. Kashat noted that she had always felt comfortable in the residence and she "had already moved in [to the home.]" She ultimately stated, however, she did not spray Mr. Dejanovic the second time because he was attacking her.

{¶11} In September 2024, a criminal complaint was filed against Ms. Kashat for one count of domestic violence, in violation of R.C. 2919.25, a misdemeanor of the first degree. The matter proceeded to jury trial after which Ms. Kashat was found guilty of the charge. She was sentenced to serve 30 days in jail, with 15 days suspended, and credit for four days served. Ms. Kashat filed a notice of appeal and assigns six errors for this court's review.

{¶12} Ms. Kashat's first assigned error provides:

{¶13} "The conviction is not supported by sufficient evidence and is against the manifest weight of the evidence."

{¶14} "In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a

Case No. 2025-P-0054

reasonable doubt." *State v. Dent*, 2020-Ohio-6670, ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶15} Unlike the standard for the sufficiency of the evidence, the "[w]eight of the evidence concerns 'the inclination of the *greater amount of credible evidence* . . . to support one side of the issue rather than the other.'" (Emphasis in original.) *State v. Thompkins*, 1997-Ohio-52, ¶ 24, quoting *Black's Law Dictionary* (6th Ed. 1990). When considering challenges to the weight of the evidence, an appellate court reviews "'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at ¶ 25, quoting *Martin* at 175.

{¶16} Thus, a conclusion that a conviction is supported by the weight of the evidence necessarily includes a determination that the State produced sufficient evidence in support of the conviction. *State v. DiBiase*, 2012-Ohio-6125, ¶ 38 (11th Dist.).

{¶17} "[C]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Fasline*, 2015-Ohio-715, ¶ 39 (11th Dist.), citing *State v. Biros*, 1997-Ohio-204, ¶ 65. "Circumstantial evidence has been defined as testimony not grounded on actual personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established." *State v. Payne*, 2014-Ohio-4304, ¶ 22 (11th Dist.), citing *State v. Nicely*, 39

Ohio St.3d 147, 150 (1988). "An inference is 'a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven.'" *State v. Windle*, 2011-Ohio-4171, ¶ 34 (11th Dist.), quoting *State v. Nevius*, 147 Ohio St. 263 (1947). "It consequently follows that 'when circumstantial evidence forms the basis of a conviction, that evidence must prove collateral facts and circumstances, from which the existence of a primary fact may be rationally inferred according to common experience.'" *State v. Armstrong*, 2016-Ohio-7841, ¶ 22 (11th Dist.), quoting *Windle* at ¶ 34.

{¶18} Ms. Kashat argues the State failed to present sufficient, credible evidence that Mr. Dejanovic is a family or household member such that she could be convicted of domestic violence. We do not agree.

{¶19} R.C. 2919.25(A) provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." A family or household member includes a "spouse, [or] a person living as a spouse" who is residing or has resided with the offender. . . ." R.C. § 2919.25, R.C. 2919.25(F)(1)(a)(i). A person living as a spouse includes anyone who "has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2). The elements of cohabitation are "(1) sharing of familial or financial responsibilities and (2) consortium." *State v. Williams*, 1997-Ohio-79, paragraph two of the syllabus. Factors that may support a sharing of familial or financial responsibilities include "provisions for shelter, food, clothing, utilities, and/or commingled assets." *Id.* at ¶ 14. Factors to consider as to consortium include "mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, [or] conjugal relations." *Id.* Notably, "[t]hese factors

Case No. 2025-P-0054

are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact." *Id.*

{¶20} Further, "Ohio courts recognize that '[t]he burden of establishing cohabitation is not substantial.'" *State v. Crisp*, 2023-Ohio-3537, ¶ 32 (6th Dist.), quoting *State v. Woullard*, 2004-Ohio-3395, ¶ 73 (2d Dist.). Indeed, in *Williams*, the Ohio Supreme Court discussed the special nature of domestic violence, explaining that "the offense of domestic violence *arises out of the relationship itself, not the fact that the parties happen to share one address*." (Emphasis added.) *Id.* at ¶ 11. *See also State v. Brown*, 2015-Ohio-950, ¶ 32 (11th Dist.). As such,  resolving the question of whether two persons had cohabited for purposes of R.C. 2919.25(F)(2), "courts should be guided by common sense and by ordinary human experience."  *State v. Young*, 1998 WL 801498, *3 (2d Dist. Nov. 20, 1998).

{¶21}  In *State v. McGlothan,*  2014-Ohio-85, the Supreme Court of Ohio also clarified that the "sharing of familial or financial responsibilities" does not *require* evidence of shared living expenses to establish cohabitation; rather, such conduct is merely one of a non-exhaustive list of factors a court may consider in determining cohabitation, none of which are, by themselves, a necessary condition for cohabitation. *Id.* at ¶ 13-14. The Court emphasized that the domestic violence statute was enacted because the General Assembly "'believed that an assault involving a family or household member deserves further protection than an assault on a stranger.'" *Id.* at ¶ 17, quoting *Williams* at 463. And that domestic violence legislation represents the General Assembly's desire to offer protection to a wide class of persons that include family members as well as residents of the same household. *Id.* at ¶ 17, citing *State v. Carswell,*  2007-Ohio-3723, ¶ 32.

Case No. 2025-P-0054

{¶22} During the State's case in chief, evidence established that the couple had been married for four years. And, while they lived in separate states, they would reside together "a few weeks here and there . . . ." Even though they had a long-distance relationship, Mr. Dejanovic stated he would travel to see Ms. Kashat, or she would come to Ohio and stay with him for approximately "four months maximum." Moreover, Mr. Dejanovic spent a month in California from December 2023 to January 2024. During this period, Ms. Kashat was recovering from breast cancer, which required surgery. While assisting Ms. Kashat with her recovery, Mr. Dejanovic testified that he also helped "fix" her residence in California.

{¶23} The couple had conversations in the summer of 2024 regarding Ms. Kashat moving to Ohio. Mr. Dejanovic stated that it "was four years in the making." He also noted that the couple owned at least two campers. He testified that "[b]oth campers are in both of [their] names." Although their communication was not as frequent as before Mr. Dejanovic's visit in late 2023 through early 2024, the couple generally had "non-stop communication. Texting, talking, sometimes three times daily. . . ."

{¶24} Moreover, Mr. Dejanovic made a video recording of the couple's interactions *after* Ms. Kashat had already sprayed him. During this exchange, Ms. Kashat was insistent that Mr. Dejanovic return her phone; he refused and stated she would have her phone once police arrived. While the couple argued about the encounter, Mr. Dejanovic asked her to leave on multiple occasions. Ms. Kashat repeatedly emphasized her position that the residence at issue was her home and she did not intend on leaving the same. ("I'm here at my home . . . ."; "This is my home, Milo."; "I'm not going, this is my home."; "It's our house."). Ms. Kashat additionally (and repeatedly) emphasized that she

Case No. 2025-P-0054

was Mr. Dejanovic's wife and he is her husband. She also indicated that she had arrived to move her "things" into the home and that the couple had these "plans" apparently for some time. These admissions by Ms. Kashat provide additional basis that the State met its initial burden of production that *the relationship* the couple mutually recognized was an important factor between them and their separate living arrangements was not critical. *See Williams*, 79 Ohio St.3d at 463. Indeed, the evidence, from both Mr. Dejanovic and Ms. Kashat, indicated they each had some, albeit nebulous, understanding that the latter would be moving into the residence in Ohio.

{¶25} Given these points, the State presented sufficient evidence to overcome defense counsel's Crim.R. 29 motion. There was some evidence to support the parties had a significant and caring relationship, regardless of their respective living circumstances. *See Williams* at 464. Indeed, Mr. Dejanovic's testimony indicated the parties had "mutual respect," "affection," "society," "cooperation," "comfort," "aid of each other," and "friendship. . . ." *Id.* at 465. Although the evidence did not discuss issues of fidelity, nothing in the record indicates infidelity was an issue. Moreover, the couple had (at least) two campers registered in their mutual names. We therefore conclude the trial court did not err in determining that the State presented sufficient evidence for a reasonable jury to conclude Mr. Dejanovic and Ms. Kashat were living as spouses such that they were sharing familial or financial responsibilities.

{¶26} Next, we address the weight of the evidence. Considering the evidence adduced during the State's case-in-chief, Ms. Kashat additionally testified that, on multiple occasions, the house in Ohio was "our" house. She also testified that she had essentially "already moved in" and she was in the process of moving "the rest of [her] things" into

Case No. 2025-P-0054

what she characterized as "our" home. Ms. Kashat's consistent characterization of the residence as the couple's mutual home weighs strongly in favor of the jury's verdict.

{¶27} We also point out that the trial court provided the jury with the following instructions regarding what is encompassed by a "family or household member." The court observed that the phrase "means a person who is residing with the defendant or has resided with the defendant and who is a spouse of or the former spouse of the defendant. Reside means to live in a place on an ongoing basis."

{¶28} The foregoing definitions essentially track the statute and, in light of the general testimony as well as the video evidence Mr. Dejanovic provided from his home, we conclude the State met its burden of persuasion.

{¶29} In sum, we hold that the State produced sufficient evidence and the evidence, in its entirety, militates in favor of the jury's verdict. That is, the State established, beyond a reasonable doubt, that Ms. Kashat knowingly caused physical harm by deploying wasp spray to Mr. Dejanovic's face and head, and that Mr. Dejanovic was a family or household member of Ms. Kashat, i.e., the couple was married and cohabited for purposes of the domestic violence statute. *See Williams*, 79 Ohio St.3d at 463 (emphasizing that the crime of domestic violence arises out of a relationship, not necessarily a shared address).

{¶30} Ms. Kashat's first assignment of error lacks merit.

{¶31} Her second assigned error provides:

{¶32} "Defense counsel rendered ineffective assistance in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 16 of the Ohio Constitution."

Case No. 2025-P-0054

{¶33} "There is a general presumption that trial counsel's conduct is within the broad range of professional assistance." *State v. Andrus*, 2020-Ohio-6810, ¶ 60 (11th Dist.), citing *State v. Bradley*, 42 Ohio St.3d 136, 142-143 (1989). The burden of establishing ineffective assistance of counsel falls upon the appealing defendant. *State v. Robinson*, 2021-Ohio-1064, ¶ 24 (11th Dist.).

{¶34} "In order to prevail on an ineffective assistance of counsel claim, an appellant must demonstrate that trial counsel's performance fell 'below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.'" *Andrus* at ¶ 60, quoting *Bradley,* paragraph two of the syllabus (adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)).

{¶35} To demonstrate prejudice, a defendant must establish there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Bradley* at paragraph three of the syllabus.

{¶36} Under this assigned error, Ms. Kashat argues counsel was ineffective for failing to directly challenge the "family or household member" element of the domestic violence statute. Considering our disposition of her first assignment of error, Ms. Kashat cannot establish counsel's performance was deficient or that it caused her defense prejudice.

{¶37} The second assignment of error lacks merit.

{¶38} Similar to the second, Ms. Kashat's third assignment of error provides:

{¶39} "Defense counsel rendered ineffective assistance in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 16 of the Ohio Constitution."

{¶40} Under this assigned error, Ms. Kashat argues trial counsel was ineffective for failing to request a hearing to address missing witness statements, 911 call records, and photographs. She asserts that a hearing was necessary to determine whether the evidence was lost in bad faith and to determine whether the evidence was exculpatory. We do not agree.

{¶41} Judicial scrutiny of counsel's performance should be highly deferential and should refrain from second-guessing strategic decisions of trial counsel. *State v. Sallie*, 1998-Ohio-343, ¶ 9-10. Tactical trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 1995-Ohio-104, ¶ 41. Rather, any alleged errors complained of must amount to a substantial violation of counsel's essential duties to his or her client. *Id*.

{¶42} In this case, Deputy Vincent Valentini of the Portage County Sheriff's Office ("the Office") responded to the incident. He testified to the essential facts of the incident and observed fingernail scratches on Ms. Kashat's forearm and finger. His body camera also recorded his interactions with the defendant and the victim.

{¶43} On cross-examination, Deputy Valentini admitted that both Ms. Kashat and Mr. Dejanovic provided him with thoroughly written statements. He testified, however, the statements were misplaced and were never entered into the Office's record system. The deputy conceded that, despite the body camera footage, the lost statements could not be compared with what he observed. The deputy admitted that the statements were important and obtaining the statements is part of police protocol. Although the deputy stated that he did not perceive the lack of the statements as a fundamental problem,

Case No. 2025-P-0054

defense counsel responded, "O.K. So if it[']s not a problem, maybe we can just get rid of doing it, right?"

{¶44} Defense counsel also cross-examined the deputy regarding the lack of evidence of the 911 calls and challenged the Office's failure to preserve the same. The deputy stated he does not have the personal ability to preserve the calls and could not account for their loss or lack of preservation. Defense counsel additionally took issue with the Office's failure to preserve certain photographs of Ms. Kashat after the incident.

{¶45} Given these points, defense counsel challenged the deputy's position that the Office does a "thorough job" because such work "protects everyone." Defense counsel concluded cross-examination by observing that the work in this case was not "very detailed." Although the deputy disagreed, counsel strategically addressed the absence of the evidence and, in doing so, elected to challenge the credibility of the investigation.

{¶46} While the evidence at issue may have been useful, we cannot conclude trial counsel's decision not to seek a hearing on the misplaced evidence rendered his assistance ineffective. To the contrary, counsel challenged the process of the investigation in a reasonable manner and, in doing so, took strong issue with the management of the investigation as well as the rigorousness of the Office's handling of fundamental investigatory protocols. We hold this was a reasonable tactical decision.

{¶47} Ms. Kashat's third assignment of error lacks merit.

{¶48} Her fourth assigned error provides:

{¶49} "Defense counsel rendered ineffective assistance in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 16 of the Ohio Constitution."

Case No. 2025-P-0054

{¶50} Similar to the previous assigned errors, Ms. Kashat challenges her counsel's effectiveness for failing to provide notice of an intent to plead self-defense.

{¶51} "Whenever a defendant in a criminal case proposes to offer evidence or argue self-defense, defense of another, or defense of that person's residence, the defendant shall, not less than . . . fourteen days before trial in a misdemeanor case, give notice in writing of such intent." Crim.R. 12.2. "If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant related to the defense, unless the court determines that in the interest of justice such evidence should be admitted." *Id.* Accordingly, "under Crim.R. 12.2, a trial court has discretion whether to exclude a defendant's evidence of self-defense after the defendant fails to file the requisite notice, and an appellate court reviews the trial court's determination for an abuse of discretion." *State v. Hawkins*, 2024-Ohio-1253, ¶ 11 (1st Dist.). The phrase "abuse of discretion" connotes a judgment exercised by a court which does not comport with reason or the record. *State v. Marcellino*, 2019-Ohio-4837, ¶ 23 (11th Dist.).

{¶52} As previously highlighted, during Mr. Dejanovic's direct examination, he testified that Ms. Kashat appeared at the residence unexpectedly, asked for a package, and when he did not immediately produce the same, she grabbed his phone and placed it in her backpack. He asserted he simply attempted to re-obtain his phone by placing his hands into the backpack and retrieving it. He was successful but he also, in retrieving his phone, took Ms. Kashat's phone.

{¶53} Ms. Kashat testified to similar facts but added that Mr. Dejanovic pulled her toward him and commenced pushing and pulling her. She added that she felt she was being attacked "in [her] own house." Ms. Kashat admitted that Mr. Dejanovic offered for

her to sit down during the incident, but she declined. Because, however, Mr. Dejanovic, would not "get off" of her, Ms. Kashat stated she sprayed him with the wasp spray.

{¶54} "'Self-defense is an affirmative defense whereby the defendant, in essence, admits to the facts of the state's case but offers additional facts that justify or excuse the defendant's use of force.'" *State v. Lewis*, 2025-Ohio-2178, ¶ 41 (6th Dist.), quoting *Maumee v. Yeager*, 2024-Ohio-858, ¶ 65 (6th Dist.). Where a defendant wishes to assert the defense of self-defense involving the use of nondeadly force, he or she must provide evidence that (1) he or she was not at fault in creating or starting the conflict giving rise to the affray; (2) he or she had reasonable grounds to believe that he or she was in imminent danger of bodily harm, and (3) he or she did not use more force than was reasonably necessary to defend against the perceived threat of harm. *See, e.g., State v. Weemes*, 2025-Ohio-2319, ¶ 31 (6th Dist.)

{¶55} R.C. 2901.09(B) provides that, "[f]or purposes of any section of the Revised Code that sets forth a criminal offense, a person has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be." "The elements of self-defense are cumulative, and a defendant's claim of self-defense fails if any one of the elements is not present." (Citations omitted.) *State v. Ridley*, 2022-Ohio-2561, ¶ 15 (1st Dist.).

{¶56} Although Ms. Kashat indicated she was afraid when Mr. Dejanovic approached her and grabbed both his and her phone, the evidence failed to credibly demonstrate she was not at fault in creating the situation which resulted in the charges. Ms. Kashat, by her own admission, took Mr. Dejanovic's phone without his permission. And, even assuming Mr. Dejanovic, pushed and pulled Ms. Kashat in an attempt to

retrieve the phone, this does not negate Ms. Kashat's initial action, i.e., the action that created the situation giving rise to the affray. This alone could reasonably undermine the first element of self-defense.

{¶57} Moreover, a legitimate argument can be made that Ms. Kashat's reaction to Mr. Dejanovic's attempt to retrieve the phone was disproportionate or more than reasonably necessary to defend the perceived threat. It is strange that Ms. Kashat was carrying wasp spray in her backpack (carried on her front) when she arrived at the residence that she characterized as "our home." That is, there was no testimony that the home had, or Ms. Kashat was worried about, wasp infestation in any way.

{¶58} Further, it is also unusual that she deploys the insecticide at Mr. Dejanovic's face when he was simply attempting to retrieve the phone Ms. Kashat took. Both Mr. Dejanovic and Ms. Kashat generally indicated that the couple had a historically amicable relationship. Hence, counsel cannot be viewed as providing deficient performance in failing to file a notice of self-defense because, he could reasonably conclude, Ms. Kashat, under the circumstances, used more force than reasonably necessary to defend against Mr. Dejanovic's perceived advances.

{¶59} For the foregoing reasons, Ms. Kashat's fourth assignment of error lacks merit.

{¶60} For her fifth assignment of error, she alleges:

{¶61} "The trial court abused its discretion in not instructing the jury concerning self-defense."

Case No. 2025-P-0054

{¶62} Ms. Kashat asserts that the record overwhelmingly demonstrated that a self-defense instruction was warranted. As a result, she claims the trial court abused its discretion in failing to provide the jury with the instruction. We do not agree.

{¶63} We incorporate our analysis of Ms. Kashat's previous assignment of error for efficiency. Given this point, at the close of the case, Ms. Kashat, via counsel, moved the court for a self-defense instruction. In overruling the request, the trial court stated:

> Number one, Criminal Rule . . . 12.2, requires that the notice of self-defense must be in writing no later, in a misdemeanor case, which this is, less than - - no less than two weeks. The - - and I'm going to put this into evidence just to - - I mean, the - - file speaks for itself. This case is approximately ten months old. Looks like at least a half dozen pre-trials. I will note that, counselor, you didn't have this case the whole time. . . The whole ten months. Probably just four of this ten maybe? Round about. . . And at no time was, at least in the court's record, the issue of self-defense was raised. So then what - - and - - I'll put this in the record just to make sure we're all on the same thing. And instructions were prepared, and I did ask . . . the court reporter, and the record will reflect that, and I'm going to put these two exhibits in, her correspondence with the parties about sending you the advance instructions. . . Also, I . . . realize I have discretion on that. . . even with the two weeks, this was not fatal, [however,] I don't feel there was sufficient evidence to justify a self-defense instruction.

{¶64} In light of the trial court's ruling, we point out that Ms. Kashat admitted that she was irritated that Mr. Dejanovic did not provide her with the package she demanded when she arrived in Ohio. She also admitted she placed his phone in her backpack. Even when Mr. Dejanovic attempted to retrieve his phone, Ms. Kashat stated he did not try to take her backpack. Ms. Kashat admitted that when she sprayed Mr. Dejanovic with the wasp spray, she was concerned. The second time she sprayed, she asserted he was not trying to attack her. In particular, the following exchange took place on cross-examination:

Case No. 2025-P-0054

Q. When he's opening the door and you spray him with the
Raid wasp spray - -

A. I didn't spray him.

Q. - - is he attacking you? Yes or no.

A. I did not spray him with the wasp spray.

Q. Yes or no?

A. *He's not attacking me - - then.*

(Emphasis added.)

{¶65} Interestingly, viewing Ms. Kashat's testimony objectively, it is unclear what she was defending, particularly during the second confirmed spraying. She testified that even though she sprayed Mr. Dejanovic with the wasp spray, she did not try to spray him. She testified that she grabbed his phone and, in the act of Mr. Dejanovic attempting to retrieve the phone, she stated, "no you can't touch me," and, as a result, she admitted she sprayed him. Also, she indicated that, while apparently initially attacking her (to obtain his phone), Mr. Dejanovic was not attacking her when she discharged the spray again. The evidence and testimony, to say the least, is ambiguous and unusual.

{¶66} Ms. Kashat's rendition of events undercuts any claim that the trial court erred in overruling defense counsel's motion to obtain a self-defense jury instruction. We hold the trial court acted within its discretion in denying the request.

{¶67} Ms. Kashat's fifth assignment of error lacks merit.

{¶68} For her final assignment of error, Ms. Kashat claims:

{¶69} "The cumulative errors of the trial court, coupled with the cumulative errors of defense counsel violated the appellant's Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 16 of the Ohio Constitution."

{¶70} Because this court has found no errors in the course of the trial, the cumulative-error doctrine is inapplicable.

{¶71} Ms. Kashat's sixth assignment of error lacks merit.

{¶72} The trial court's decisions and final judgment are affirmed.

MATT LYNCH, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2025-P-0054

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error lack merit. It is the judgment and order of this court that the judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.

Costs to be taxed against appellant.

_____
JUDGE EUGENE A. LUCCI

_____
PRESIDING JUDGE MATT LYNCH,
concurs

_____
JUDGE JOHN J. EKLUND,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2025-P-0054